694 So.2d 418 (1997)
Aerenia, wife of/and Tim RODRIGUEZ
v.
Joseph JULIUS, State Farm Insurance Company and Allstate Insurance Company.
No. 96-CA-473.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
Rehearing Denied June 17, 1997.
*419 T. Peter Breslin, Chehardy, Sherman, Ellis Breslin & Murray, Metairie, for plaintiffs-appellants.
Joseph B. Morton, III, Andrew D. Weinstock Duplass, Zwain & Williams, Metairie, for defendants-appellees.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This appeal relates to a personal injury action wherein the plaintiffs, Tim and Aerenia Rodriguez, appeal the judgment of the lower court, which awarded $3,000.00 in past, present, and future pain and suffering and $1,500.00 in past and future medical expenses to Mr. Rodriguez. Mrs. Rodriguez received nothing on her claim for loss of consortium and no damages were awarded for past, present, or future mental anguish and emotional distress or for past lost wages. We affirm.

FACTS AND PROCEDURAL HISTORY
On April 24, 1994, a car, driven by Mr. Joseph Julius, crashed head-on into Mr. Rodriguez's vehicle. Mr. Rodriguez, the appellant herein, suffered several injuries and spent about three days in the hospital, from Sunday evening until the following Wednesday afternoon. Mr. Julius subsequently pled guilty to DWI in this matter.
On June 16, 1994, Mr. and Mrs. Rodriguez filed suit against Mr. Julius and his insurer, State Farm Insurance Company ("State Farm"), and Allstate Insurance Company ("Allstate"), their own uninsured/underinsured policy carrier. On July 29, 1994, the Rodriguezes filed an amended petition claiming Allstate was acting in an arbitrary and capricious manner in failing to tender benefits in a timely manner. On October 4, 1994, the Rodriguezes settled with Mr. Julius and his insurer, State Farm, and filed a Motion for Dismissal, which was granted by the trial judge. The appellants then filed a Motion for Summary Judgment, asking that the exclusion of exemplary damages in the uninsured motorist coverage of the Allstate policy in question be declared invalid. Allstate filed a Motion for Partial Summary Judgment, seeking to have that exclusion declared valid. The appellants then filed a Cross-Motion for Summary Judgment on the question of Allstate's handling this claim in an arbitrary and capricious manner. After a hearing on the matter, the trial judge granted, without written Reasons, Allstate's Motion for Partial Summary Judgment and denied the appellants cross-motion and the case proceeded to trial.
After a three-day trial, the jury returned a verdict, finding Joseph Julius' negligence to have been the cause of the accident. The jury awarded Mr. Rodriguez $3,000.00 in general damages and $1,500.00 in past and future medical expenses and nothing for emotional distress or lost wages. Mrs. Rodriguez got nothing on her claim of loss of consortium. Mr. and Mrs. Rodriguez have appealed this judgment.

ISSUES
The issues presented are:
(1) Whether the jury award was inadequate;
(2) Whether the jury's failure to award Mrs. Rodriguez anything for her loss of consortium claim was manifestly erroneous;
(3) Whether the jury was clearly wrong in finding Allstate handled this matter in a proper fashion; and
*420 (4) Whether the trial judge erred in refusing to allow the jury to decide if the money paid by Mr. Julius should be applied to exemplary damages.

ISSUE ONE

Law
La.Civ.Code art. 1999 provides that "[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." Additionally, the Louisiana Supreme Court has stated that
the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the Effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).

Analysis
The record shows that the plaintiff-appellant did suffer injuries in the automobile accident, including two broken ribs, a partially collapsed lung, a hairline fracture of the lower leg, a shoulder injury, a sprained wrist, cracked teeth, abrasions and contusions, and glass imbedded in his head and chest. Mr. Rodriguez missed about six weeks of work. Prior to the trial, Allstate paid the appellant $26,000.00, representing $6,918.75 in lost wages (six weeks' worth), $11,247.50 in medical expenses, and $17,833.75 for pain and suffering. The appellants settled with Mr. Julius and State Farm for $10,000.00.

DR. ROBERT CARTER
Dr. Robert Carter, a general surgeon who qualified as an expert in the field of medicine with a speciality in surgery, treated Mr. Rodriguez at West Jefferson Hospital after the accident. Dr. Carter treated Mr. Rodriguez for his broken ribs, his collapsed lung, and the glass in his face and chest. Dr. Carter noted that nothing could be done to treat the collapsed lung suffered by Mr. Rodriguez. He stated that "[n]othing needs to be done on a small pneumothorax. If it doesn't get worse it will heal itself completely and expand." In fact that is what happened. He testified on cross-examination that, on May 5, 1994, 11 days after the accident, X-rays showed Mr. Rodriguez's lung had reinflated. Treatment for rib fractures is the same as for a 15 percent collapsed lung. He opined that nothing other than time can fix a fractured rib. The doctor testified further that chest X-rays taken on May 11 and 12 were normal and that, when he saw Mr. Rodriguez on June 6, 1994, he made no complaints about his ribs. Regarding the glass embedded in Mr. Rodriguez's face and chest, he said he gave Mr. Rodriguez three options: (1) he could wait and see if the glass came out on its own; (2) he could have the glass removed under a local anesthetic; or (3) he could wait until he was under a general anesthetic for some reason and then have the glass removed. Those options were given to the appellant on his May 23, 1994-visit. Mr. Rodriguez last saw Dr. Carter on June 6, 1994, and, at that time, Dr. Carter was ready to let the appellant go back to work.

DR. ROBERT FLEMING
Dr. Robert Fleming, who qualified as an expert in the field of orthopedics, treated Mr. Rodriguez for his orthopedic injuries and first saw Mr. Rodriguez on May 23, 1994, about one month after the accident. At that time, Mr. Rodriguez complained of pain in the region between his right clavicle and the breast bone, pain in his left knee with the inability to bear full weight on that knee, and discomfort at the base of his right neck. He also told Dr. Fleming he "had been told that he possibly had a fracture of ... his left clavicle." Mr. Rodriguez further complained of "some discomfort [of] his left elbow and the left wrist." Dr. Fleming treated Mr. Rodriguez for about 11 months, last seeing him on March 15, 1995. He never prescribed any pain medication for Mr. Rodriguez and referred to the injuries for which he treated the appellant as "soft tissue injuries," that is, injuries to the muscles and ligaments.

DR. RUSSELL DIMARCO
Dr. Russell Dimarco, who qualified as an expert in dentistry, testified that the appellant had six fractured teeth as a result of the *421 automobile accident. He stated the teeth would likely need root canals and crowns at some later time at a cost of $4,015.00. On cross-examination, he opined that he had repaired tooth number 31 at a cost of $48.00, while his estimate for the repair of that tooth was about $450.00. At the time of trial, the appellant had been charged $123.00 for the repair of his damaged teeth. Mr. Wayne Minor, the Allstate agent who handled this claim, testified that, about two and one-half months after the accident, Allstate issued a check to Mr. Rodriguez for his medical bills, saying "four thousand of which were from a dentist who said it's possible he may need this work and it would cost four thousand [dollars]."
In the final analysis, while Mr. Rodriguez was injured in this accident, he was back at work in six weeks. Prior to trial, Mr. Rodriguez received $36,000.00 from Allstate, including $10,000.00 from State Farm for general damages. Keeping in mind the restraints of Article 1999 of the Louisiana Civil Code and prior jurisprudence, this Court believes, based on the record, the award given by the trial court is not an abuse of that court's "much discretion."

ISSUE TWO

Law
The denial of Mrs. Rodriguez's claim for loss of consortium will only be overturned if the jury was clearly wrong or manifestly erroneous. Stobart v. State of La., through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). A claim for loss of consortium encompasses seven elements: loss of love and affection; loss of society and companionship; impairment of sexual relations; loss of performance of material service; loss of financial support; loss of aid and assistance; and loss of fidelity. Saegers v. Pailet, 95-52 (La.App. 5th Cir. 5/10/95), 656 So.2d 700, 713 (citing Beckham v. St. Paul Fire & Marine Ins., 614 So.2d 760 (La.App. 2nd Cir.1993)).

Analysis
We see Mrs. Rodriguez stated that, after the accident, she took care of her husband, "doing everything for him for at least ten days...." She mowed the grass twice during her husband's recuperation, took out the trash, and did the family driving. Finally, she stated she was anxious about the family's bills getting paid while he was out of work.
We find the jury apparently gave Mrs. Rodriguez's testimony the weight it rightfully deserved, which falls extremely short in meeting the required jurisprudential mandate. Ergo, we see no error.

ISSUE THREE
Next, the appellants argue that the jury was clearly wrong in finding Allstate properly handled this claim. Again, we disagree.

Law
This is a question of fact and, as such, this Court will not disturb the finding of the jury absent manifest error. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Analysis
The appellants argue correctly that La. R.S. 22:658(A)(1) requires insurers to pay a claim "within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." Importantly, that same statute states that the insurer is subject to a penalty only when such a failure is found to be arbitrary, capricious, or without probable cause. La.R.S. 22:658(B)(1).
We see Allstate tendered the first check sent to Mr. Rodriguez on July 14, 1994, 31 days after demand was made. Mr. Minor, the Allstate claims adjuster handling this claim, testified that, on July 14, 1994, he received documentation from State Farm regarding the monetary limits in Mr. Julius' policy. The appellant seems to argue that because Allstate had verbal notification of the State Farm policy limits, Allstate should have acted prior to receiving written validation. Mr. Minor testified that several calls were made to State Farm to get this information in written form. We see no merit in the appellants' argument and note that the record supports the jury's finding that Allstate did not act in an arbitrary or capricious manner.
*422 The appellants next argue that Allstate acted arbitrarily and capriciously regarding the payments made for lost wages. On July 27, 1994, Mr. Minor received the documentation from Mr. Rodriguez's employer establishing his lost wages. On August 24, 1994, Mr. Minor contacted Mr. Rodriguez's supervisor to authenticate the documentation received in July and subsequently mailed a check for $5,535.00 that same day. That mailing occurred within 30 days of Allstate having received satisfactory proof of the loss.
Mr. Rodriguez had claimed more than $6,000.00 in lost wages. The first payment made by Allstate represented net wages, not gross wages. Mr. Minor testified that, on October 4, 1994, his defense counsel informed him that while there was a division in the circuit courts regarding the payment of gross versus net wages, courts were now leaning toward payment of gross wages as the correct response to a lost-wage claim. That same day, Mr. Minor mailed a check to Mr. Rodriguez for $1,383.75, representing the difference between the first check, which was for net lost wages, and the full amount claimed, that is, the gross amount. Again, the record supports the jury's finding that Allstate acted neither arbitrarily nor capriciously in this matter.

ISSUE FOUR
Finally, the appellants argue that the trial judge erred in refusing to apply the $10,000.00 paid in settlement by the tortfeasors' insurer to punitive damages. Again, we disagree.

Law
Issues of relevance are governed by the Louisiana Code of Evidence. La.Code Evid. art. 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Trial judges are given great discretion in matters of relevancy and will not be overturned absent an abuse of discretion. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168; State v. Mayeaux, 570 So.2d 185 (La.App. 5th Cir.1990), writ denied, 575 So.2d 386 (La.1991).

Analysis
The appellants argue that the trial judge erred in not allowing the jury to decide the money tendered in settlement by State Farm applied to punitive rather than general damages. The trial court granted Allstate's Partial Motion for Summary Judgment, which stated that the appellants had no claim against Allstate for punitive and/or exemplary damages under the terms of the policy. Just prior to trial, Allstate filed a Motion in Limine, asking the trial judge to exclude any testimony or evidence regarding the alleged intoxication of Mr. Julius. In its motion, Allstate offered to stipulate that Mr. Julius' negligence was the sole cause of the accident. The appellants refused to accept that stipulation, and the trial judge allowed Mr. Julius to testify solely for the purpose of liability. The trial judge did not charge the jury regarding exemplary damages.
The appellants amicably settled with, fully compromised, and dismissed Mr. Julius and State Farm. The matter of punitive damages was not before the court in the claim the appellants pursued against Allstate. Ergo, we see no error.
For the reasons assigned, we affirm the trial court's judgment. All costs of this appeal are to be assessed against the appellants.
AFFIRMED.
BOWES, J., dissents.
BOWES, Judge, dissenting, being shocked by the lowness of the verdict.
I would raise the jury verdict and amend the judgment of the trial court to $25,000.00, in general damages, $11,124.50 as stipulated medical expenses, plus $4,015.00 for future medical expenses, plus $9,225.00 for loss of gross wages, for a total judgment of $40,148.73. All in addition to the $36,000.00 previously received by plaintiff from Allstate and State Farm.