699 So.2d 115 (1997)
Ernest Zachary COOPER and Susan Cooper
v.
LIBERTY MUTUAL INSURANCE COMPANY, and Allstate Insurance Company, Lydia A. Giles and Lois T. Jacobs.
No. 96-CA-1522.
Court of Appeal of Louisiana, Fourth Circuit.
August 20, 1997.
*116 Kenny M. Charbonnet, William V. Renaudin, Jr., Metairie, for Defendant/Appellant Liberty Mutual Ins. Co.
Randolph C. Slone, Jane L. Triola, Slidell, for Appellees.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
Liberty Mutual Insurance Company, plaintiffs' uninsured/underinsured motorist carrier, appeals the district court's Judgment Notwithstanding the Verdict (JNOV) wherein the jury's allocation of 40% of the fault to plaintiff, Zachary Cooper, was set aside and Liberty Mutual was cast in judgment, not only for 100% of plaintiffs' damages, but for penalties and attorney's fees for its arbitrary and capricious handling of the claim.
Plaintiffs' lawsuit arose out of a collision that occurred around midnight on Interstate 10 in New Orleans East. Mr. and Mrs. Zachary Cooper, plaintiffs, were on their way to New Orleans for their honeymoon when they collided with a van driven by Lois Jacobs. Moments earlier, the Jacobs vehicle had collided with a deer which had attempted to cross I10. The Jacobs vehicle had a $10,000.00 policy limit with Allstate which was paid to the Coopers prior to trial. The matter proceeded to trial against Liberty Mutual in its capacity as the Coopers' UM carrier.[1] The issues before the jury were the relative fault of Jacobs and Cooper as well as whether Liberty Mutual was arbitrary and capricious in its dealings with its insured.[2]
The jury returned its verdict finding Jacobs 60% at fault and Cooper 40% at fault. In a somewhat inconsistent finding, the jury found that Liberty Mutual made an unconditional tender of settlement within 30 days after receipt of loss, but then found it to be arbitrary and capricious. The jury also denied Mrs. Cooper's claim for loss of consortium, although it did award $145.00 in medicals. On motion for JNOV, the trial court rendered judgment allocating 100% of the fault to Jacobs, awarding Mrs. Cooper $5,000.00 for loss of consortium, and finding Liberty Mutual to be arbitrary and capricious in the handling of plaintiffs' claim. Liberty Mutual appeals that judgment.
In reasons for granting the JNOV, the trial court reviewed the expert witness testimony presented at trial and concluded that "the facts and inferences point strongly and overwhelmingly in plaintiff's favor." In Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991), our Supreme Court, citing Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986), summarized the criteria to be used in determining whether a JNOV is proper.

*117 A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
First, Liberty Mutual argues that allocation of 100% of the fault to Jacobs is error because it is contrary to the expert testimony and other evidence. It also argues that Jacobs was confronted with a sudden emergency which exonerated her of any fault.[3] In order to determine whether the JNOV was warranted, it is necessary that we review the evidence presented to the jury and determine if it so strongly favors allocating 100% of the fault to Jacobs that reasonable jurors could not have reached any other opinion.

TESTIMONY
Zachary Cooper testified that he was driving in the far right lane of the westbound I-10 in New Orleans East when the van driven by Jacobs appeared in front of his vehicle suddenly, causing him to strike the van. He claims that he was traveling at 55 m.p.h. and that he hit the brakes before the collision. He acknowledged that his friends had written messages on the windows of his car which remained on the car as the Coopers left their wedding reception. Photographs of the Cooper vehicle showed writing on the front windshield in addition to the other windows.
Susan Cooper testified that she was not looking forward when the accident occurred, but she was sure that her husband had his eyes on the road. She was unsure as to whether or not her husband had applied the brakes before colliding with the van. She also claimed that their vehicle was in the far right lane when they hit the van.
Lois Jacobs, the driver of the van, testified that she and five other women was traveling in the left lane westbound on I-10 at 50 to 55 m.p.h. when the van collided with a deer, causing the deer to hit the windshield of the van. She said she did not see the deer before the impact. She said her airbag inflated, pinning her to the seat and impairing her vision. She claimed that she brought the van to a complete stop after hitting the deer.
According to Jacobs, one of the women in the van suggested that they pray, which they did briefly. Another woman then suggested they move the vehicle when suddenly they were hit from behind by Cooper. Jacobs testified that the van was not moving at any time prior to the impact with the other vehicle. She claimed that the airbag was still inflated at the time of the collision with the other vehicle and her vision was still obscured. She estimated that between 20 and 30 seconds elapsed between the impact with the deer and the impact with the other vehicle. Jacobs stated that the van was in the *118 far left lane when the collision with the other vehicle occurred.
Hope Bickham, a passenger in the van driven by Jacobs, stated that Jacobs had commented about the deer shortly before the deer hit their windshield. She said that she had just suggested praying when they were hit by the other vehicle. Bickham testified that the van was at a complete stop in the left lane when hit by the other vehicle.
Carolyn Abell, an emergency room nurse at Slidell Memorial Hospital on the night of the accident, testified that her notes from that evening showed that she took a history from Zachary Cooper and made the following notation: "driver of medium size vehicle states that ran into a car at a complete stop and hit the brake while traveling sixty-five miles per hour."
Officer Leroy Doucette testified that he assisted in the investigation of this accident. He stated that to the best of his knowledge, the van's impact with the deer and with the Cooper vehicle were both in the left lane.
Sylvanus Walker, an accident reconstruction expert, testified that his opinion was that the Jacobs van was moving across the highway to the right at an angle at the time of the collision. Judging from the final position of the vehicles, Walker felt it was impossible for the van to have been stopped in the left lane at the time of impact with the Cooper vehicle. He determined that after the impact with the deer, Jacobs stopped the van in the far left lane, hesitated for 20 to 40 seconds and then decided to move the van to the shoulder on the far right side of the interstate. According to Walker, Jacobs accomplished this by pulling out diagonally across the center and right lanes. His opinion was that the impact with the Cooper van occurred quickly after Jacobs made this move and that the van was traveling relatively slowly, i.e. 5-15 m.p.h. at the time.
Walker estimated that the Cooper vehicle was traveling 25-30 m.p.h. at the time of impact which indicated to him that Cooper had the brakes applied at the time of the collision. His opinion is that Cooper did not have sufficient time to stop his vehicle before the collision. Walker's opinion is that Jacobs caused this accident by pulling out across the center and right lanes at approximately a 40 degree angle.
Charles Pruitt, an accident reconstruction expert, opined that the accident occurred in the center lane. His determination was that the van was proceeding westbound, collided with a deer and then suddenly veered to the right at which time the Cooper vehicle that was traveling westbound collided with the right side of the van. Pruitt found that the van was moving at the time of impact with the Cooper vehicle.
He also testified that he does not think the speed of the Cooper vehicle contributed to the fact that there was a collision. Pruitt believes that Zachary Cooper was faced with a sudden emergency, i.e. driving down the road when a car suddenly veered in front of him. His opinion is that given the sudden emergency, Cooper did not have adequate time to react and stop. He said this would be true whether Cooper was traveling at 55 m.p.h. or 65 m.p.h.
Pruitt stated that when the deer shattered the windshield of the van, the airbag inflated right in Jacobs' face. He said that the inflated airbag can obscure vision and affect a driver's ability to use the steering wheel. His opinion is that the van veered into the middle lane because of the impact and emergency situation caused by the collision with the deer. Pruitt's opinion was also that once Jacobs struck the deer and the airbag was in her face, she was also in a sudden emergency situation.
Pruitt stated his opinion that Cooper was traveling in the right lane at 65 m.p.h. which was in excess of the speed limit. He said Cooper did not stay in the right lane and was moving into the center lane when the accident occurred. He said he found no evidence that Cooper was tired or not paying attention.
Officer Norbert Carroll investigated the accident and testified that he believed the accident between the Jacobs van and the Cooper vehicle occurred in the center lane after the van struck the deer in the left lane and then veered to the right at which time the car struck the van on the side. He *119 stated that he felt it was only a matter of seconds between the time Jacobs struck the deer and Cooper struck Jacobs. Carroll testified that he did not know of anything either one of the drivers could have done to avoid this accident.
Raymond Burkhart, an accident reconstruction expert, opined that the Jacobs van was stopped in the left lane or slightly between the left and middle lanes at the time of the collision with the Cooper vehicle. However, he stated that regardless of whether Jacobs' van was moving or stationary, this accident was avoidable because Jacobs' rear lights were on and were visible from a distance of approximately 600 feet which is more than the stopping distance needed for a vehicle traveling at 65 m.p.h. He said that even with the Jacobs van moving, this accident could have been avoided if Cooper had been attentive. His opinion was that Cooper's inattentiveness was the primary cause of this accident. He also stated that if Cooper had applied the brakes and traveled at the speed limit, this accident would have been prevented. Burkhart's opinion was that Cooper's exceeding the speed limit was the second primary causative factor of this accident. He also noted that the writing on Cooper's windshield inhibited Cooper's ability to see the Jacobs van.
Burkhart stated that Jacobs was able to bring the van to a complete stop after the airbag inflated. He acknowledged that there is some evidence showing that 30 to 40 seconds were expended by the occupants of the van praying and talking after the impact with the deer. He did not think Jacobs had time to move the van after the impact with the deer because of the inflation of the airbag. He said that while the airbag did not cause any disabling injuries to Jacobs, the inflation of an airbag can have a disabling effect on a driver's reaction. Burkhart's opinion is that about 30 seconds elapsed between the impact with the deer and the impact between the two vehicles.
Burkhart concluded that the theory of the van moving across the highway after the impact with the deer is impossible because of the final locations of the two vehicles after the collision. He believes the Jacobs van was stationary at the time of the collision and that Jacobs was faced with a sudden emergency and was not at fault in this accident.
Oscar Griffith, an expert in physics with a specialty in accident reconstruction, testified that he agreed with Burkhart's conclusions. He thinks Cooper swerved to the left from the far right lane and caused the accident by going too fast and not paying attention. His opinion is that Jacobs was in a sudden emergency situation when she collided with the deer and that there was nothing she could have done to have avoided this accident. He also stated, however, that the sudden emergency caused by the impact with the deer ended when the van was brought to a stop.

FAULT
Based on our review of the evidence, we conclude that the trial judge erred in granting a JNOV with respect to fault. Although conflicting, there certainly was sufficient evidence to persuade reasonable minds that Cooper was at least partly at fault. There was also sufficient evidence to persuade reasonable minds that Jacobs was at least partly at fault and that her negligence was not negated by the sudden emergency doctrine.
We first address Liberty Mutual's argument that the trial judge erred in refusing to give the jury an interrogatory on the sudden emergency doctrine. Although the judge did refuse to give such an interrogatory, the record shows that she instructed the jury at length on the sudden emergency doctrine, including the fact that the sudden emergency doctrine is a defense to a negligence claim. Although it might have been preferable to have a specific interrogatory on sudden emergency, we find that the instruction given on sudden emergency, along with the interrogatory asking if Jacobs was negligent, sufficiently apprised the jury of the necessity of considering that doctrine. We cannot say, as a matter of law, that it was error for the trial judge to exclude a specific interrogatory on sudden emergency, nor can we say under the particular facts of this case, that the jury's rejection of that defense was clearly wrong.
*120 The evidence satisfies us that the jury's finding of negligence on the part of Jacobs encompassed their consideration of the sudden emergency doctrine, and its rejection. The sudden emergency doctrine was explained in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 389 (1972), as follows:
One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.
In this case, it would be reasonable to say that Jacobs was faced with a sudden emergency when she hit the deer. However, subsequent to that impact there is much conflict in the testimony as to what happened. There is support in the record for a finding that Jacobs attempted to cross the interstate at an angle to reach the emergency lane. When that was attempted, she was no longer in a sudden emergency situation. In fact, there is expert testimony that Jacobs' attempt to cross the interstate at an angle was the cause of this accident. Therefore, we are satisfied that the record contains sufficient evidence to support the jury's finding that Jacobs was at least partially negligent in this accident and that any sudden emergency ceased to exist when her negligence occurred.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). We cannot say that the jury's allocation of 60% of fault to Jacobs and 40% to Cooper warranted a JNOV, nor can we say it is manifestly erroneous or clearly wrong. For that reason, we reinstate the jury's allocation of fault and affirm that finding.

LOSS OF CONSORTIUM
The jury verdict did not include an award for loss of consortium to Susan Cooper. In the JNOV, the trial judge awarded Susan Cooper $5,000.00 for loss of consortium, stating in reasons for judgment that "[t]his Court is of the opinion that anyone who is denied a honeymoon to care for her injured husband is entitled to an award for consortium."
A cause of action for loss of consortium arises when the claimant suffers the actual loss of consortium, service and society. Coates v. Owens Corning Fiberglas Corp., 444 So.2d 788 (La.App. 4 Cir.1984). A successful claimant for loss of consortium damages must prove three things: 1) the liability of the defendant, 2) his or her spouse's damages, and 3) his or her consequent loss of consortium damages. Gilbert v. Laborde, 93-761 (La.App. 3 Cir. 2/2/94), 632 So.2d 1162, 1169 (on rehearing), writ denied, 94-0896 (La.5/20/94), 637 So.2d 480.
Susan Cooper offered no testimony on the specific issue of her claimed damages for loss of consortium. In fact, the record is barren of any testimony in this regard. The trial judge awarded $5,000.00 because it was the Cooper's honeymoon and thus some consortium loss was assumed. However, the jury thought otherwise, and under our standard of review, that decision was reasonable given the lack of evidence. Hence we cannot say it is clearly wrong.

FUTURE MEDICAL EXPENSES
Liberty Mutual also argues that the award of future medical expenses to Zachary Cooper was unwarranted.[4] In Nuckley v. Gail M. Woods, Inc., 94-2190, p. 4 (La.App. 4 Cir. 4/26/95), 654 So.2d 840, 842, this Court set forth the applicable law on awards for future medical expenses as follows:
Future medical expenses need not be established with mathematical certainty. Burton v. Berthelot, 567 So.2d 649, 663 (La.App. 4th Cir.), writ den. 569 So.2d 989 (La.1990). However, they must be *121 established with some degree of certainty and the plaintiff must show that expenses more probably than not will be incurred. Harris v. Tenneco Oil Co., 563 So.2d 317, 327 (La.App. 4th Cir.), writ den. 568 So.2d 1062 (La.1990).
In this case, Dr. Mark Hontas and Dr. Stephen Davenport, both orthopedic surgeons, testified that it is more probable than not that Zachary Cooper will need a total hip replacement in the future because of the nature of the hip injury suffered by him in this accident. Dr. Davenport testified that the total costs associated with this procedure would be approximately $26,000 to $27,000. Dr. David Shenton, another orthopedic surgeon, testified that there is a reasonable medical probability that Cooper will need total hip replacement surgery in the future, however he would not say it was more probable than not. There is sufficient evidence to support the award of $27,000 in future medical expenses to Zachary Cooper.

STATUTORY PENALTIES AND ATTORNEY FEES:
The jury responses with respect to penalties and attorney fees are inconsistent. In answer to interrogatory No. 7, which asked if a timely (within 30 days) unconditional tender had been made, the jury responded "Yes." However, interrogatory No. 8 asked if Liberty Mutual was arbitrary and capricious, to which the jury also responded "Yes." The confusing responses can be attributed in great part to the instructions after interrogatory No. 7 which advised the jury to answer No. 8 if "Yes" was the answer to No. 7 and to stop if the answer to No. 7 was "No." The reverse of those instructions should have been given, i.e. if no timely tender was made, then the jury should have decided if Liberty Mutual was arbitrary and capricious.
Regardless, the trial judge resolved the conflict by finding that Liberty Mutual made an unconditional tender 36 days after receipt of satisfactory proof of loss and thus was liable for statutory penalties and attorney fees. Liberty Mutual argues that it was clear error to find it arbitrary and capricious. We agree.
Initially we observe that the trial court's reasons indicate that her ruling was based strictly on the fact that the unconditional tender was more than thirty days after receipt of loss. To the extent that payment beyond thirty days was the trial judge's sole reason for imposing penalties, that was legal error.
Louisiana Revised Statute 22:658 provides in pertinent part:
A. (1) All insurers issuing any type of contract ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * * * * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1)... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty... together with all reasonable attorney fees....
The above statute applies to underinsured/uninsured motorist's claims. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983). "A claimant ... under the statute has the burden of proving that the insurer failed to pay the claim within [30][5] days after receiving `satisfactory proof of loss' of the claim and that the insurer was arbitrary or capricious in failing to pay." McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La.1985), emphasis added. See also, Rodriguez v. Julius, 96-473 (La.App. 5 Cir. 3/25/97), 694 So.2d 418. The elements of proving "satisfactory proof of loss" require the insured to establish sufficient facts which apprise the insurer that (1) the owner or operator of the other vehicle was underinsured or uninsured; (2) that the other driver was at fault; (3) that such fault gave rise to damages; and (4) the extent of those damages. McDill, supra at 1089, citing Hart v. Allstate, supra. Thus, in order to subject Liberty Mutual to the penalties and attorney fees of La. R.S. *122 22:658, not only must the tender be more than thirty days from the proof of loss, but the failure to make the tender must be arbitrary and capricious. The trial judge made no conclusion on whether or not Liberty Mutual lacked good reason for making the tender six days late.
The evidence shows that Liberty Mutual's adjuster, Anthony Collins, determined on August 15, 1994 that an additional tender of $25,000.00 would be in order.[6] Subsequent to that determination Liberty Mutual received additional information which caused it to eventually tender $72,660.75 on September 21, 1994. That additional information included an updated medical report from Dr. Davenport, an orthopedist in Billings, Montana and other information about fault and lost wages obtained during an unsuccessful mediation attempt on September 21st.
Based on this scenario we simply cannot conclude that Liberty Mutual was arbitrary in making its tender on September 21, 1994. The evidence satisfies us that it was reasonable for Liberty Mutual to await the outcome of the mediation attempt before making a tender. While we recognize that Liberty Mutual was satisfied on August 15th that it was liable for at least $25,000.00, it cannot be taken to task for making a tender of almost three times that amount thirty six days later. The six day delay was reasonable, particularly in view of the fact that mediation was scheduled within that time frame and the short delay resulted in a substantial increase in the tender.
For the reasons stated above, we reverse the JNOV in its entirety, reinstate the jury's allocation of fault and its damage awards. We reverse the finding that Liberty Mutual was arbitrary and capricious and dismiss plaintiffs' claim for penalties and attorney fees.
REVERSED AND RENDERED.
NOTES
[1] Initially everybody, including the Jacobs' passengers, sued everybody. Liberty Mutual, at that time, defended the Coopers in its capacity as their liability insurer.
[2] Of course, damages were also at issue in the trial. However, the only damage awards at issue in this appeal are the jury's award of future medical expenses to Zachary Cooper and the JNOV award of loss of consortium to Susan Cooper.
[3] We have consolidated Liberty Mutual's assignments of error on the fault issue for ease of presentation.
[4] The amount of damages awarded to Zachary Cooper were the same in the jury verdict and the JNOV, i.e. $33,000.00 for past medicals; $27,000.00 for future medicals and $175,000.00 for general damages.
[5] At the time McDill was decided, the statute mandated payment within 60 days. In 1989, it was shortened to 30 days.
[6] A previous unconditional tender of $27,339.25 had been made in May of 1994, as well as a tender of the medicals which was made shortly after the accident. Liberty Mutual complains that the trial court erred in not allowing it to offer evidence to the jury of the amounts paid. In support, it cites La. C.E. art. 413. Although Liberty Mutual's argument has merit, we need not decide that evidentiary issue because we hold that it was not arbitrary and capricious.