708 So.2d 1220 (1998)
Michael J. MOLONY, Jr.
v.
USAA PROPERTY AND CASUALTY INS. CO.
No. 97-CA-1836.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1998.
*1221 Dominic J. Gianna, Wade P. Webster, Middleberg, Riddle & Gianna, New Orleans, for Appellee.
Timothy G. Schafer, Schafer & Schafer, New Orleans, for Appellant.
Before SCHOTT, C.J., and LOBRANO and WALTZER, JJ.
LOBRANO, Judge.
On December 18, 1991, while crossing Canal Street, plaintiff, Michael Molony, was struck by an automobile and thrown some distance onto the pavement. Plaintiff, then in his late 60s, had to be hospitalized from December 18, 1991 through January 22, 1992. He returned to the hospital for three days in February, 1992, to drain and remove a cystic mass on his left hip. He suffered head trauma, a broken pelvis, fractured ribs, ankle and knee injuries, various lacerations and contusions about the face and other areas, and vision problems. After being paid $21,571.20 by the tortfeasor's insurer, State Farm, Mr. Molony then sought recovery from his own insurer, United Services Automobile Association (USAA) pursuant to its uninsured motorist provisions. In addition, he sought penalties and attorney fees, even though USAA made an unconditional tender of $128,000.00 prior to trial.
Plaintiff's damages were tried to a jury while his claim for penalties and attorney fees under La. R.S. 22:658 and R.S. 22:1220 were tried to the judge. The jury awarded plaintiff total damages of $264,634.00, which included $25,000.00 in future medical expenses, $34,634.00 in lost wages, $100,000.00 in past pain and suffering and mental anguish, $100,000.00 in future pain and suffering and disability, and $5,000.00 for disfigurement. Reducing those amounts by the sums already paid by State Farm and unconditionally tendered by USAA, the amount actually due from USAA totaled $115,062.80. To that amount, the trial judge awarded attorney's fees in the amount of $52,926.00, plus penalties of $11,506.00 under La. R.S. 22:658 and $30,000.00 under La. R.S. 22:1220, with legal interest from the date of the judgment.
USAA perfects this appeal arguing (1) that the award of future medicals is not supported by the evidence, (2) that the judge erred in not considering USAA's challenge to the sufficiency of evidence on plaintiff's future medical damage claim, (3) that the award for future pain, suffering and disability is not supported by the evidence and (4) that the award of penalties and attorney fees is erroneous. Mr. Molony answers the appeal arguing the jury award is inadequate.
Initially we conclude that because USAA has raised as error on appeal the insufficiency of evidence with respect to future medicals, we need not address its second assignment of error. In that error, USAA argues the trial judge erred by refusing to consider on a motion for JNOV, USAA's challenge to the future medicals reasoning that USAA did not challenge or object to that particular jury interrogatory. We consider the claim of insufficient evidence of future medicals and thus USAA's second assignment of error is moot.

FUTURE MEDICALS:
Future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred. Cooper v. Liberty Mut. Ins. Co., 96-1522 (La.App. 4th Cir. 8/20/97), 699 So.2d 115. Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record. Turner v. Pelican, 94-1926 (La.App. 4th Cir. 9/15/96), 661 So.2d 1065, writ denied 95-2513 (La.12/15/95), 664 So.2d 441, quoting Dixon v. Winn-Dixie Louisiana, Inc., 93-1627 (La.App. 4th Cir. 5/17/94), 638 So.2d 306. If the fact finder can determine from past medical expenses or *1222 other evidence a minimal amount that reasonable minds could agree upon, then an award is proper. Id.
USAA argues that plaintiff proved neither the need nor the cost of future medicals. USAA relies on the testimony of Drs. Claude Williams and Paul Bagalman, plaintiff's orthopedist and internist, who testified that no further treatment would be required. Plaintiff counters with his medical records and Dr. Williams' testimony which suggest that his pelvis fractures will make it more likely than not that he will develop arthritis. He also relies on Dr. Lawton's testimony that Dr. Gordon, another eye specialist, had recommended surgery to correct plaintiff's double vision problem. Dr. Gordon did not testify.
The evidence is sufficient to support a reasonable probability that plaintiff will develop arthritis and, perhaps has a need for future eye surgery. However, there is absolutely no evidence to substantiate the costs of those future problems.
Mr. Molony asserts that where damages are incapable of precise measurement, much discretion shall be left to the court for the reasonable assessment of those damages. See, La. C.C. Art.1999. He directs our attention to Stiles v. K-Mart Corp., 597 So.2d 1012, (La.1992), wherein the Supreme Court reiterated that an award of future medicals should not be rejected where "... the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree ...." at 1013.
While Mr. Molony's legal argument is correct, it is not applicable to the present case. Nowhere in the record is there even a rough estimate or suggestion of what those future costs may be. Nor is this a case where the future medical expenses are similar to, and thus can be extrapolated from, past medical expenses. Both Mr. Molony's potential eye surgery and arthritis are conditions unlike those he has dealt with in the past; he offered no guidelines by which the trier of fact could measure his future medical expenses. Simply, the evidence does not support the $25,000.00 award. Based on the record before us, the award is pure speculation by the jury and must be reversed.

FUTURE PAIN, SUFFERING AND DISABILITY:
USAA argues that the jury abused its discretion in its award for future damages. Specifically USAA asserts that, while the plaintiff's injuries were severe, most of them are not likely to cause future problems. In particular, USAA urges that plaintiff has failed to prove that his double vision problem was caused by the accident.
The record suggests that plaintiff's future pain, suffering and disability are predicated on three areas of difficulty: his impaired mobility due to his back, rib, shoulder and knee injuries; his increased chances of arthritis in his fractured pelvis and hip; and his double vision. We review the evidence to determine if it supports the jury's award of $100,000.00.
Dr. Williams, as Mr. Molony's treating orthopedist, testified at trial that Mr. Molony still complained of stiffness and pain in his hip and back. Dr. Williams assigned a 15% impairment of function of his body as a whole. Mr. Molony testified as to the lasting nature of these injuries:
I have back pain on a regular basis. And Iit's aggravated when I sit, for example, when I get in the car, when I get out of the car, when I sit down or stand. In fact, sometimes I'll get up out of bed and the pain is so severe that I have to sit back down again.
USAA does not contest causation with respect to plaintiff's hip and back injury, but questions the severity and regularity of this pain. It points to the fact that Mr. Molony walks three or four miles approximately three times a week, suggesting that he is still physically active and able. The fact that he is still able to take these walksprescribed by his doctors as therapy for his injuries does not negate Dr. Williams' finding of a 15% permanent disability. USAA further argues, however, that Dr. Williams admitted his disability rating is a "textbook" figure and as such, it does not mean Mr. Molony cannot stoop, bend, sit or stand. Neither Mr. Molony nor his physician represented his *1223 condition as entirely debilitating. In fact, the evidence shows that Mr. Molony had a very remarkable recovery considering the extent of his injuries. However, the evidence also shows that Mr. Molony can expect future pain and discomfort, especially to his back, because of aggravation of a degenerative condition known as spondylolisthesis.
Dr. Williams also testified as to the possibility that Mr. Molony would develop arthritis in his hip joints as a result of the pelvic fractures. USAA points out that Dr. Williams did say this likelihood was not as strong as it could be. Dr. Williams pointed out that had the pelvic fractures actually extended into the acetabulum (the hip joint), plaintiff's chances of developing arthritis would be even greater. Nevertheless, we find that Dr. Williams' testimony is sufficient to support an award for the probability of future arthritic pain.
While not conceding the extent of the above future problems, USAA suggests in brief that the award for future pain, suffering and disability can be justified only if plaintiff's double vision can be attributed to the accident. USAA argues that the record evidence does not support a causal relationship. Plaintiff relies on the expert testimony of Dr. Lawton, a neuro-ophthalmologist, who opined that there was a strong likelihood that the accident contributed to plaintiff's double vision. That opinion, however, is predicated on the fact that plaintiff began to notice a deterioration of his vision less than ninety days after the accident. USAA strongly urges that the evidence does not support that fact, and thus Dr. Lawton's opinion must be disregarded.
We first observe that the medical records in evidence show that plaintiff had vision problems which pre-date the accident. He had been diagnosed with esophoria, a tendency for visual lines to project inward, i.e. eyes to cross, and had undergone cataract surgery in both eyes. Plaintiff's pre-accident esophoria was described as a tendency for the eye to turn in, even though when both eyes were uncovered he was able to maintain them in a straight position. He also had a condition called Fuch's dystrophy, a hereditary condition of the cornea, and used drops for glaucoma. Most important, however, is the fact that esophoria eventually may lead to double vision. It is undisputed that plaintiff had double vision by June 22, 1992. However, accounts differ as to when plaintiff began complaining of vision problems subsequent to the accident, and as discussed infra, the time element is an important factor in Dr. Lawton's opinion on causation.
Plaintiff testified that in February or March of 1992 he experienced depth perception problems which gradually increased in severity. He testified that on June 22, 1992 he told Dr. Caldwell, an opthalmologist, that his problems had been worsening over the last two to three months. Dr. Caldwell did not testify. However, Dr. Lawton testified from Dr. Caldwell's notes and records from Tulane Medical Center which indicate that Mr. Molony had stated that his vision problems developed within the last two or three months [from June 22nd].[1]
Fearing a neurological problem, Dr. Caldwell referred plaintiff to Dr. Bouldin, a neurologist. After examination and testing, with negative results, Dr. Bouldin then referred plaintiff to Dr. Lawton. Dr. Bouldin wrote Dr. Lawton in late June and confirmed that "the patient had described two to three weeks of intermittent diplopia [double vision] which appeared to be somewhat progressive."[2]
Dr. Lawton was asked his opinion as to causation predicated on the assumption that plaintiff reported to Dr. Caldwell that he began to notice deterioration of his vision less than 90 days after the accident. Dr. Lawton's response was that "if its [sic] all accurate [all the information] then it would place the beginnings of the problem in close proximity to the accident and indicate that there was a strong likelihood that the accident contributed to the progression [of his vision problems]." On cross-examination, however, Dr. Lawton admitted that plaintiff told him on his initial visit that his double *1224 vision problem was first noticed in mid-June. Dr. Lawton conceded that, if the mid-June history was accurate, there would be only a small possibility the double vision was accident related.
Plaintiff insisted at trial that Drs. Lawton and Bouldin incorrectly recorded his history. USAA counters with plaintiff's response to pre-trial discovery wherein he states that misalignment of the left eye was noted about five months following the accident. USAA urges that where the opinion of an expert is based on inaccurate facts, it has no probative value and should be ignored. While that argument is legally correct, as applied to this case we simply cannot say there was manifest error by the jury in relying on Dr. Lawton's opinion.
Plaintiff's past medical history supports the conclusion that he had a predisposition for developing vision problems. Dr. Lawton also testified that only a small percentage of persons suffering esophoria develop a complete breakdown of their ability to hold their eyes together. The evidence is conflicting as to when plaintiff first noticed increased problems with his vision. According to plaintiff and Dr. Caldwell's records, his first problems with depth perception were noted within ninety days of the accident. According to Drs. Lawton and Bouldin, it was noted in early or mid June. Where two permissive views of the evidence exist, the trier of fact's choice between them cannot be erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). We cannot say the jury's consideration of, and weight given to, Dr. Lawton's opinion given on direct examination is manifestly erroneous. Nor can we reject as unreasonable, that the accident caused Mr. Molony's double vision. Thus, considering that disability, along with the others, we find no abuse of discretion in the jury's award of $100,000.00.

INSUFFICIENCY OF THE AWARD:
Plaintiff argues that the jury award is woefully deficient and should be increased. In support, he reiterates his numerous injuries including his vision problems and 15% permanent partial disability. Plaintiff urges that $205,000.00 in general damages "for these grave debilitating injuries" is pitiful especially considering his age, 74 at the time of trial.
It is well recognized that the trier of fact is vested with much discretion in making a general damage award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the appellate review of an award requires that the initial inquiry be whether the award for "the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Id. at 1260. In determining if there is an abuse of discretion a reviewing court must consider the evidence in the light most favorable to the verdict. Carter v. Baham, 95-2126 (La.App. 4th Cir. 10/9/96), 683 So.2d 299.
It is undisputed plaintiff sustained severe injuries as a result of the accident. He sustained six fractured ribs, fractures of the pelvis, a concussion, various lacerations about the face, bruised kidney, aggravation of degenerative back problems, soft tissue sprains of the ankle and knee, swelling on the left hip which required surgical drainage and double vision problems. He was hospitalized for thirty six days during which he suffered considerable pain. Dr. Williams, his orthopedist, followed plaintiff from the date of the accident (December 18, 1991) through March 24, 1992. However, as of March 1992 plaintiff's progress was excellent. Plaintiff underwent limited physical therapy in May of 1992, and he testified by June he was at the driving range, albeit he had discomfort with his golf swing because of the rib fractures. By that time he had returned to work full time. Dr. Williams assigned a 15% permanent partial disability as a result of plaintiff's injuries.
In brief, plaintiff cites numerous cases in comparison. However, our initial determination is whether the award for general damages is so inadequate as to constitute an abuse of discretion. Review of other cases for comparables is not relevant until we find an abuse of discretion. Based on our review of the evidence we find no such abuse.
Undoubtedly plaintiff's injuries were initially painful and caused substantial inconvenience *1225 and suffering. However, the evidence also shows that plaintiff made an excellent recovery, and within six months was back at work and participating in outdoor activities. Despite being prescribed physical therapy two to three times a week, plaintiff went only a total of three times. We simply cannot say that $100,000.00 for past pain and suffering and $5,000.00 for disfigurement are so inadequate as to constitute an abuse of discretion.
We recognize that double vision will be a continuing problem for Mr. Molony. However, the evidence suggests that he has adapted to the problem and that he is still able to pursue his profession as an attorney. He described the problem as "... if I'm over here or if I'm walking and, you know, there's a tree here, the tree is in front of me. So when I'm reading and I'm looking down at something on paper, occasionally I'll have to close my left eye because the left eye sees double from what I see on the paper." Considering this evidence and all the evidence previously reviewed with respect to future disability and pain and suffering, including the possibility of arthritic pain, we cannot say $100,000.00 for those damages is such an abuse of discretion as to warrant disturbing the jury's award.

STATUTORY PENALTIES AND ATTORNEY FEES:
The trial court awarded plaintiff penalties, damages and attorney fees under both La. R.S. 22:658 and R.S. 22:1220. Based on USAA's own reserve and evaluations, the court found that the undisputed portion of plaintiff's claim was worth at least $175,000.00. The court then concluded that the unconditional tender of $149,571.00 was at the low end of USAA's $146,000.00 to $168,000.00 evaluation and thus USAA had failed in its obligation to tender a reasonable sum.[3] The court buttressed its bad faith finding by noting that USAA's justification of the tender amount was to save "room to bargain."
USAA first argues that the court erred in finding it arbitrary and capricious. Alternatively, USAA argues the court erred in imposing penalties under both statutes, in its computation of penalties under R.S. 22:658 and its assessment of damages under R.S. 22:1220. Plaintiff counters with the argument that once USAA had established reserves of $175,000.00, its tender of $149,571.00 was not a good faith tender especially in view of USAA's testimony regarding "leaving room to bargain."
Louisiana Revised Statute 22:658(A) provides that all insurers must pay the amount of any claim due an insured within thirty days of receipt of satisfactory proof of loss. Paragraph B of that statute provides that when failure to pay within thirty days is found to be arbitrary, capricious or without probable cause, penalties and attorney fees may be awarded. Louisiana Revised Statute 22:1220, enacted in 1990, provides for the award of damages, as well as penalties and attorney fees, if an insurer breaches its duty of good faith and fair dealing.
In McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La.1985), the Louisiana Supreme Court recognized the insurer's duty, under its underinsured/uninsured policy provisions, to unconditionally tender a reasonable amount to its insured where it is shown that its insured is not at fault, the other driver was underinsured/uninsured and that its insured was damaged. The court described the unconditional tender as the amount "over which reasonable minds could not differ." at p. 1092. In McDill, the court reinstated an award of penalties and attorney fees where the insurer made no unconditional tender. "In this case, had Utica tendered some reasonable amount of the general damages, they would not have been arbitrary and capricious and the penalty provision would not apply." Id. However, the court recognized the penal nature of R.S. 22:658 and its requirement of strict construction. "The stipulated sanctions [of R.S. 22:658] should be imposed only in those instances in which the facts negate probable cause for non-payment." Id.
*1226 The facts precipitating USAA's tender are basically undisputed. Apparently plaintiff changed attorneys in December of 1992. It was not until July 22, 1993 that his attorney forwarded copies of all available medicals to USAA and requested a tender. Within twenty days, USAA tendered $100,000.00. When additional information was obtained, USAA made an additional $28,000.00 tender on November 3, 1994. Thus, plaintiff received the total sum of $149,571.20 prior to trial. [The tender amounts plus State Farm's payment.] Plaintiff's argument is simply that that amount was not sufficient considering USAA's reserve amount and its representative's "room to or bargain" testimony, and therefore it was arbitrary and capricious. For the following reasons we conclude the trial court erred and reverse the award of penalties and attorney fees.
McDill and its progeny make clear that the reason for an unconditional tender by the insurer is to fulfill its duty of good faith to its insured. It is not a mechanism to force a settlement. The amount tendered has been described as an "undisputed amount", Patin v. Imperial Lloyds Ins. Co., 95-841 (La.App. 3rd Cir. 1/17/96), 670 So.2d 238 and "the figure over which reasonable minds could not differ." McDill v. Utica Ins. Co., supra. If there is a reasonable dispute between the insurer and the insured as to the amount of a loss, the insurer's refusal to pay is not arbitrary, capricious or without probable cause. Patin v. Imperial Lloyds Ins. Co., supra; Thibodeaux v. USAA Cas. Ins. Co., 93-2238 (La.App. 1st Cir. 11/10/94), 647 So.2d 351. As we previously discussed, the evidence in this case shows that a legitimate dispute existed with respect to the cause of plaintiff's eye injury. Thus, when that dispute is taken into consideration, we hold that USAA's tender was reasonable and satisfied their duty of good faith.
We further hold that, to the extent the trial judge relied on a comparison between USAA's reserve estimate and the amount tendered, that reliance was error. Plaintiff and defendant give different interpretations of the term "reserve." Plaintiff argues it means "the value of a claim", while USAA says it includes expense items as well as claim value. The only record evidence describing reserve is testimony by USAA's representative who says that it is the dollars "held for the purpose of paying their claims." We need not resolve that disagreement, however, because we are satisfied that reserve does not mean "the amount over which reasonable minds could not differ", which is what McDill requires. We simply do not equate "reserve" with "undisputed amount." The reasonableness of USAA's tender is not gauged by simply comparing it with its reserves, but is determined on a consideration of the facts known to the insurer prior to trial and whether reasonable minds could not differ on the amount that is due in light of those facts. General damages are not subject to an exact measure, and given the concern over causation with respect to plaintiff's vision, reasonable minds could easily differ over the value of plaintiff's claim. For the same reason, comparing the ultimate jury verdict with the amount tendered is not a proper gauge of the tender's reasonableness. That would be a "hindsight" determination.
Furthermore, we are not persuaded that the tender was arbitrary and capricious because it was on the "low end" of USAA's settlement range. It is undisputed USAA valued the case for settlement purposes between $146,000.00 and $168,000.00. USAA made a tender, not a settlement offer, of what it believed was undisputedly owed to plaintiff. Simply because the amount tendered was lower than the high-end of what USAA was willing to pay to end the litigation does not make the tender unreasonable. The plaintiff bore the burden of proving that USAA was arbitrary and capricious, and without probable cause, in not tendering a larger amount given the information it had before it. We hold plaintiff did not satisfy that burden.[4] For those reasons, we conclude *1227 that damages, penalties and attorney fees are not warranted under either La. R.S. 22:658 or La. R.S. 22:1220.
For the reasons assigned, we reverse the award of future medicals and statutory penalties and attorney fees. In all other respects, the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Dr. Lawton testified that Mr. Molony's history was not in Dr. Caldwell's handwriting, but appeared to have been taken by a technician.
[2] Dr. Bouldin testified via deposition.
[3] Both the trial judge's reasons and the briefs of both parties refer to the tender amounts, settlement amounts and reserve amounts in total dollars. That is, the plaintiff had already received $21,571.20 from State Farm. Thus when USAA's tender is referred to as $149,571.20, it includes the amount of State Farm's settlement. Unless otherwise indicated, our discussion utilizes the same "total dollars" format.
[4] During oral argument, plaintiff referred us to Brinston v. Automotive Casualty Insurance Company, 96-1982 (La.App. 4th Cir. 12/3/97); 703 So.2d. 813 While informative, that case does not support plaintiff's argument. There was no tender in that case. We upheld the trial court's conclusion that Automotive Casualty was arbitrary because it failed to fully investigate the claim of the insured. In the present case, there is no allegation of failure to investigate, only a failure to tender a greater amount.