|,MARION F. EDWARDS, Judge.
Plaintiff/Appellant, Beatrice Duncan, appeals the award of general and special damages granted to her by the trial court for injuries sustained in an automobile accident, asserting that the trial court erred by undervaluing her injuries. Duncan further argues that the trial court erred in failing to address her claims for penalties and attorneys fees based upon the allegations that defendant, Allstate, was arbitrary and capricious in not timely paying Duncan’s medical costs and in not making an unconditional tender under Duncan’s uninsured motorist policy. Duncan also argues on appeal that the trial court erred in failing to award her legal interest on all sums paid to her by Allstate after she had filed suit. For the following reasons, we amend in part and affirm as amended.
On August 18, 1997, Beatrice Duncan, (“Duncan”), was stopped at a traffic light in front of another vehicle on Airport Road in Kenner, Louisiana. A chain reaction of collisions was created amid those waiting at the red light, when 13a car operated by Alvin Daigs ran into the back on one vehicle, which in turn crashed into the car driven by Duncan. Both Duncan and Daigs were insured by Allstate at the time of the accident. As a result of the collision, Duncan claimed that she sustained various injuries, including the aggravation of pre-existing osteoarthritis in her spine, hip, and other joints. Prior the time that Duncan filed suit, she sought medical treatment from several sources.
On October 15, 1997, Allstate issued a medical payment check to East Jefferson Hospital, where emergency room care was rendered to Duncan immediately following the accident. On March 3, 1998, Duncan also submitted medical bills from two other treating physicians, Drs. Altman and Cazale, to Allstate, however these charges were not immediately paid as Allstate disputed whether the treatment was necessitated by the accident. On April 29, 1998, Allstate issued a check to Duncan and Medicare, a lien holder, for $10,000.00, which represented the limits on Alvin Daigs’ policy, along with a full release of Daigs. On May 7, 1998, counsel for Duncan sent a reply letter to Allstate requesting that Allstate pay the remainder of its $2,000.00 med pay coverage for Duncan, a total of $976.65. Once again, Allstate disputed whether the treatment sought by Duncan was related to the accident, and did not pay the $976.65 at that time. On June 5, 1998, Duncan sent correspondence to Allstate indicating that the $10,000.00 check it issued had not been cashed. In a letter dated March 31, 1999, the reason given by counsel for Duncan regarding the hesitancy in cashing the check was that the release language was not acceptable.
Duncan filed suit on August 13, 1998, in The Twenty Fourth Judicial District Court for the Parish of Jefferson, alleging that Allstate had been arbitrary and capricious in failing to timely make payments under the uninsured motorist | coverage and medical payments coverage provisions of her policy. Duncan did acknowledge in her petition, however, that all of her claims for property damage had been satisfied. After the suit was filed, Duncan, continued to treat with Dr. Cazale for chronic pain, as she had prior to the accident. On March 1, 1999, Allstate issued a check for the balance of Duncan’s medical pay coverage, $976.65, after receiving information during settlement negotiations which they deemed to be sufficient proof of loss. On March 15, 1999, Allstate unconditionally tendered $5,000.00 to Duncan under her uninsured motorist coverage, and on July 21,1999, Allstate issued another $10,000.00 check, along with a new release in regard to Alvin Daigs.
*423 The trial of this matter took place on September 19, 2000, October 5, 2000, and November 21, 2000. The trial court ruled in favor of Duncan, finding that Duncan’s injuries had been inadequately compensated by Allstate. Accordingly, the trial court awarded an additional $3,000.00 in general damages and an additional $2,268.11 in medical specials, for a total award of $5,628.11. This award was made in addition to the $17,000.00 previously paid to Duncan by Allstate.
Duncan filed a motion for a new trial on January 23, 2001, which alleged the same issues presently raised on appeal. On May 9, 2001, the trial court denied Duncan’s motion for a new trial, but awarded legal interest on the court’s judgment dated January 11, 2001, and on the $5,000.00 underinsured tender paid by Allstate from the date of judicial demand until the date of tender, March 16, 1999. Duncan timely filed a motion and order for appeal from the court’s ruling.
LAW AND ANALYSIS
In her first assignment of error, Duncan asserts that the trial court abused | Sits discretion by undervaluing the damages that she sustained, which resulted in an unreasonably low award.
In Wehbe v. Waguespack,[1] we noted that:
The discretion vesting in the trier of fact is great and even vast, so that an appellate court should rarely disturb an award for general damages. Reasonable persons frequently disagree with the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff on the particular circumstances, that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Alfonso v. Piccadilly Cafeteria, Inc., 95-279 (La.App. 5th Cir.11/28/95), 665 So.2d 589, writ denied, 95-3119 (La.2/16/96), 667 So.2d 1060.[2]
In Cobb v. Wal-Mart Stores, Inc.,[3] this Court further noted that the determination of whether a trial court abused its discretion in assessing damages must be based upon the peculiar facts of each case and with due regard to the fact that the trial court is in the best position to evaluate the credibility of the witnesses, including the testimony regarding the nature and extent of their injuries.[4] The question for the appellate court is not whether a different award is more appropriate, but whether the trial court’s award can be reasonably supported by the record.
In this case, the trial court was presented with the following evidence regarding Ms. Duncan’s claim for damages: Allstate introduced Duncan’s medical records, which indicated that she had undergone treatment for “degenerative arthritis” from as early as 1974. Duncan testified that prior to the | ^accident, she had visited Dr. Cazale, her family doctor, regularly every three months for treatment of her arthritis. Dr. Cazale testified that, in his opinion, as a result of the accident, Ms. Duncan sustained a “soft-tissue injury of the neck, back, [and] left hip [which was] superimposed upon her degenerative disc *424 disease and degenerative arthritic changes.” Dr. Cazale further testified that there was not a substantial difference in the method of treatment for Ms. Duncan from before the accident, and that basically her medication for pain control was the same. Dr. Cazale also concluded that, in his judgment, he would still have been treating Ms. Duncan for the same symptoms and complaints even is she had not been involved in the automobile accident. While Duncan had undergone physical therapy for 5-6 months, according to Dr. Cazale, this would have been a sufficient time to return Duncan to “a pre-accident condition in which she would be suffering from the preexisting inflammatory process of arthritis.”
Duncan argues, however, that she distinguished at trial the symptoms she experienced before the accident from the symptoms she experienced after the accident, in particular, pain in her head, neck, left leg, and left hip. Duncan also refers to her trial testimony in which she discusses the change in her lifestyle which was brought upon by the accident. She further asserts that the trial court apparently failed to take these factors into account in awarding her damages.
Based on our review of the record, we find that the trial court’s determination of quantum in regard to general damages is reasonably supported by the record, and that the trial judge did not abuse his discretion in assessing this award.
In her second assignment of error, Duncan claims that the trial court erred in failing to address her claim for penalties and attorneys fees due to alleged |7violations of the insurance code.
LSA-R.S. 22:658(A)(1), states that all insurers issuing any type of contract, “shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.” Section (B)(1) of the same title also states that a failure to make such a payment within thirty days after receipt of such satisfactory written proofs and demand and when such failure is found to be arbitrary, capricious, or without probable cause, it shall subject the insurer to a penalty, and all reasonable attorney fees for the prosecution and collection of the amount. In Myers v. Broussard,[5] the Third Circuit used the following analysis in regard to above referenced provisions of LSA-R.S. 22:658:
Whether a refusal to pay a claim is arbitrary, capricious, or without probable cause hinges on the facts known to the insurer at the time of its refusal to pay the claim. Wells v. Houston, 95-202 (La.App. 3rd Cir.6/7/95); 657 So.2d 474, writ denied, 95-1733 (La.10/13/95); 661 So.2d 500. The determination of whether an insurer’s handling of a claim is arbitrary or capricious is one of fact, which should not be disturbed on appeal unless it is manifestly erroneous. Khaled v. Windham], 94-2171 [(La.App. 1st Cir.06/23/95)]; 657 So.2d 672. However, the provisions of La.R.S. 22:658 are penal in nature and should be strictly construed. Perkins v. Guaranty Nat’l Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, writ denied, 96-0759 (La.5/31/96); 673 So.2d 1033. If an insurer, in good faith, has presented a reasonable defense for its failure to timely tender payment, then these penalty provisions should not apply. Id.[6]
Additionally, LSA-R.S. 22:1220 provides in relevant part:
*425 A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times [sthe damages sustained or five thousand dollars, whichever is greater.
In this case, Duncan claims that for many months prior to the time she filed suit, as well as for six months after she filed suit, Allstate knew that it had not fully paid Duncan’s $2,000.00 medical payment coverage. In particular, Duncan alleges that after Allstate had timely paid $1,023.35 for emergency care rendered to her by East Jefferson Hospital, on May 7, 1998, her attorney requested that the balance of $976.65 be paid to her as well. Duncan asserts that the amount requested was not paid by Allstate until March 1, 1999, nearly 15 months after Allstate had received the medical statement from Dr. Stewart E. Altman, which indicated the cost of medical treatment exceeded the $2,000.00 coverage. Because of the time delay between the request for payment and the time that payment was rendered by Allstate, Duncan argues that Allstate should be deemed to have acted arbitrarily and capriciously.
Allstate argues, however, that as of the date of the initial demand on May 7, 1998, it had considered Duncan’s prior medical history, as well as her treatment to that date, and considered the claim to have fully been satisfied. Allstate also argues that the subsequent medical tests performed on Duncan confirmed their position that no further treatment of Duncan was necessary. In particular, Allstate refers to a report by Dr. Cazale, which they received on September 3, 1998. The report stated that Duncan sustained an aggravation of a pre existing condition. Allstate claims that it finally paid Duncan when it discovered in the midst of settlement negotiations that Duncan was still receiving medical treatment related to the accident. At that time, Allstate asserts, it was satisfied of Duncan’s proof of loss, and remitted the balance of her medical payment coverage. Allstate argues that prior to the time it made payment, there |flwere causation questions as to the source of Duncan’s complaints.
In light of the evidence presented at trial, we find that Allstate presented a reasonable defense for the time table in which it tendered payment. We further find that the trial court’s determination that Allstate, did not act arbitrarily or capriciously in making the medical payment was not manifestly erroneous.
By this assignment, Duncan also contends that the trial court erred in failing to find that Allstate had not made a timely unconditional tender under her un-derinsured motorist coverage pursuant to LSA R.S. 22:1220 and LSA R.S. 22:658. Allstate argues, however, that the trial court correctly assessed the reasonableness of their tender to Duncan. Allstate relies on the holding of Molony v. USAA Property and Cas. Ins. Co.,[7] in which the Fourth Circuit noted that the reason for an unconditional tender by the insurer is to fulfill its duty of good faith to its insured, and not to force a settlement. The Court in Molony also described the amount tendered as an “undisputed *426 amount”.[8] In that case, the Court found that where there was a legitimate dispute over the cause of an injury to the plaintiffs eye, the insurer’s tender was deemed reasonable and in keeping with the statutory duty of good faith.[9]
Similar to Molony, Allstate argues, in this case, given Duncan’s medical history of a pre-existing arthritic condition and past treatment for almost identical symptoms prior to the accident, it was reasonable to question causation. Allstate also argues that Duncan’s own treating physician resolved a number of causation questions in its favor. Allstate concludes that the amount of the tender it made to ImDuncan, based on the facts known, was reasonable. The trial court, after considering Allstate’s argument, apparently concluded that Allstate did not act arbitrarily or capriciously in making its unconditional tender. We cannot say that the trial court’s finding regarding the unconditional tender was manifestly erroneous.
In her third assignment of error, Duncan asserts that the trial court erred in failing to award her legal interest on all sums paid to her by Allstate after she had filed suit. In particular, Duncan seeks interest on three amounts: $10,000.00, which represents the liability coverage of Allstate’s tortfeasor, Alvin Daigs; $5,000.00, which represents Allstate’s un-derinsured tender offer, and $976.65, which was the medical payments balance paid by Allstate.
LSA-C.C. Art. 2925 states:
The release of the principal, without any reserve as to interest, raises the presumption that it also has been paid, and operates a release of it.
In Sutton v. Oncale,[10] this Court followed the holding of Martin v. Champion Insurance Co.,[11] in which the Louisiana Supreme Court reasoned that the plaintiff waived his rights to interest on the amount paid by the primary insurer through his failure to specifically reserve his rights pursuant to LSA-C.C. art. 2925.
This case is immediately distinguishable from Sutton, where the plaintiff had specifically reserved the right to judicial interest in her release of the tortfeasor. In this case, a review of the Partial Motion and Order to Dismiss Alvin Daigs and Allstate Insurance Company as his insurer, shows that Duncan did not specifically reserve her rights to a claim on judicial interest against h, Allstate, as Daigs’s insurer. Accordingly, we cannot say that the trial court erred in not granting interest on the $10,000.00 paid in satisfaction of Daigs’s liability.
LSA-R.S. 13:4203 states that:
“Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, “ex delicto”, which may be rendered by any of the courts.”
Accordingly, by order dated May 9, 2001, the trial court properly awarded interest on the $5,000.00 underinsured tender paid by Allstate to Duncan. We find no error in regard to the trial court’s judgment in this regard.
Finally, we note that the trial court did not address the issue of whether legal interest would run on the $976.65, which was the medical payments balance paid by Allstate to Duncan. We find that under LSA-R.S. 13:4203, the trial court should have awarded interest on this amount, in *427 addition to the interest on the $5,000.00 uninsured tender.
For the foregoing reasons, the judgment of the trial court is amended to include interest on the $976.65 from the date of judicial demand, and affirmed as amended.
AFFIRMED AS AMENDED.

. 98-475 (La.App. 5 Cir. 10/28/98), 720 So.2d 1267; writs of error denied, La. 98-2907, 736 So.2d 211 (La.1999); La. 98-2970, 736 So.2d 213, (La.1999).

. Id. at 1272.

. 624 So.2d 5, (La.App. 5 Cir.1993).

. Id., citing Buquoi v. Allstate Insurance Co., 556 So.2d 163 (La.App. 5th Cir.1990).

. 696 So.2d 88 (La.App. 3rd Cir.1997)

. Id. at 103.

. 708 So.2d 1220 (La.App. 4th Cir. 1998).

. Id. at 1226.

. Id.

. 99-967 (La.App. 5th Cir.3/29/00), 765 So.2d 1072, 1076.

. 95-0030 (La.6/30/95), 656 So.2d 991,