785 So.2d 906 (2001)
Jerome DANIELS
v.
Douglas BURRIDGE and CNA International Reinsurance Company Limited.
No. 2000-CA-1089.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2001.
*908 Robert G. Harvey, Sr., Harvey Jacobson, New Orleans, Counsel for Plaintiff/Appellee.
David R. Frohn, Robin A. Anderson, Frohn & Thibodeaux, L.L.C., Lake Charles, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY.
KIRBY, Judge.
Defendants, Douglas Burridge and CNA International Reinsurance Company Limited, lodged this appeal citing error in the finding of liability, and error in the amount awarded for general damages, future medical expenses, and past lost wages. We amend an error in the trial court's calculations, and affirm as amended.

STATEMENT OF THE CASE
This case arises out of a September 21, 1997 automobile accident between a vehicle driven by Defendant, Douglas Burridge, and a vehicle driven by Plaintiff, Jerome Daniels. On the day of the accident, Plaintiff was traveling down S. Miro Street in New Orleans, Louisiana. Defendant driver, Douglas Burridge, was pulling from the private parking lot of Swifty Rental Car onto S. Miro Street. Defendant failed to yield and slammed into the left side of Plaintiffs vehicle. As a result of the accident in question, the Plaintiff suffered extensive injuries and damages.
Plaintiff filed his lawsuit in the Civil District Court for the Parish of Orleans. This matter came on for trial by judge on December 20, 1999. After hearing all of the testimony and evidence, the trial court judge, found in favor of the Plaintiff. The trial court found that Plaintiff, Jerome Daniels, did not bear any comparative fault for this accident and awarded damages in the amount of $468,469.19 for pain and *909 suffering, loss of sexual function, past lost wages, and past and future medical expenses.
The Defendants have lodged this appeal citing error in the finding of liability, and error in the amount awarded for general damages, future medical expenses, and past lost wages. The Plaintiff responds to the Defendants' assertions by highlighting the key exhibits and testimony, which he claims support the trial court's determination of liability. The Plaintiff also avers that the trial court's general damage, loss of sexual function, past lost wages, and past and future medical expenses awards were within its broad discretion given the facts and circumstances surrounding this case.
Defendant assigns the following errors to the trial court: (1) the trial court erred in its allocation of fault, particularly by not assigning any comparative fault to plaintiff; (2) the trial court erred in awarding past lost wages in an amount unsupported by evidence at trial; (3) the trial court erred in awarding damages for medical conditions that the medical testimony and evidence did not relate to this accident; (4) the trial court erred in awarding damages for future medical expenses when the medical testimony and evidence showed only speculation about whether the expenses would be necessary.

STATEMENT OF THE LAW
The standard of review for factual findings in this case is the manifestly erroneous or clearly wrong standard.
In our three-tiered judicial system, findings of fact are allocated to the trial courts. It is a well-settled principle that an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly wrong. Rosell, supra at 845; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333. Where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra at 844. The reviewing court must always keep in mind that if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La. 1990).
For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart, supra at 883; Theriot v. Lasseigne, 640 So.2d 1305 (La.1994).
Mistich v. Volkswagen of Germany, Inc., 95-0939, (La.1/29/96), 666 So.2d 1073, 1077.

LIABILITY
In their first assignment of error, Appellants aver that the trial court improperly *910 found Mr. Burridge 100% at fault for the accident in question.
The statute most relevant to this case is LSA-R.S. 32:124, which provides:
The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building... shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. (Emphasis added.)
Further, in LSA-R.S.32:1(25) "highway" is defined as "the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries; synonymous with the word `street.'" Clearly, the street where this accident occurred, S. Miro, is a highway under the law and Defendant had an obligation to enter it with care and to yield to all oncoming drivers, such as Plaintiff.
In Davis v. Galilee Baptist Church 486 So.2d 1021, 1024 (La.App. 2 Cir.1986), our brethren explained the burden imposed by LSA-R.S. 32:124 on drivers exiting a private parking lot.
A motorist who is about to enter a roadway form a private driveway is required to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. Unusual, extreme, and high care toward favored traffic is required of such a motorist under the case law. Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of the statute. (Emphasis added.)
Defendant was required under the law to engage in exiting the private parking lot of Swifty Car Rental with "unusual, extreme, and high care." The testimony was clear that S. Miro was a busy street. Further, Defendant's witness, Monette McCollum, described the intersection of S. Miro street and the exit from the Swifty Car Rental lot as a "dangerous intersection." She testified that she knew from experience the potential damage or danger of that intersection. She further admitted discussing with "several people coming in and out of the gate" the potential danger of exiting the gate from the Swifty Car Rental lot. Ms. McCollum confirmed that "even crossing across the street was bad with the way the cars were parked." It was Ms. McCollum's opinion that Mr. Burridge was aware of how dangerous it was to exit through the Swifty Car Rental gate.
On the day of the accident at issue, Mr. Burridge and Ms. McCollum testified that there were vans parked on both sides of the entrance of the driveway into Swifty Rental. Clearly, the presence of all the parked vehicles along the exitway of the Swifty Car lot increased the danger associated with exiting and entering into S. Miro Street. Therefore, Mr. Burridge's burden in engaging in such a dangerous act further increased.
A driver entering the highway has a primary or high duty to avoid a collision; this duty becomes more onerous as the hazards increase and requires a motorist to use every reasonable means available to ascertain that his entry onto the highway may be made in safety, and such a driver is required to keep a look-out *911 for vehicles on the highway and desist from entering until it is apparent to a reasonably prudent person that such can be done in safety. (Emphasis added.)
Corvers v. Acme Truck Lines, 95-925 (La. App. 5 Cir. 4/16/96), 673 So.2d 1088, 1090 (citing Soileau v. LaFosse, 558 So.2d 294 (La.App. 3 Cir.1990)).
Defendants argue that the trial court erred by not finding that Plaintiffs conduct contributed to the accident in question. They allege that Plaintiff was traveling in an improper lane and/or was speeding prior to the accident. However, the law provides that the burden of proving circumstances, such as speed, which caused or contributed to the accident is on the driver intruding into a favored street in violation of LSA-R.S. 32:124. Corvers v. Acme Truck Lines, 95-925 (La.App. 5 Cir. 4/16/96), 4, 673 So.2d 1088, 1090 (citing Migues v. Hebert, 93-1509 (La.App. 3 Cir. 6/1/94), 640 So.2d 670).
Two different versions of the automobile accident were presented at trial and the trial court determined that Defendant was indeed the responsible party for the collision between the vehicles. When there is conflict in trial testimony, we, as a court of appeal, are not at liberty to disturb reasonable evaluations of credibility and reasonable inferences of fact absent manifest error. A review of the record reveals that the trial court's findings are reasonable vis-á-vis the evidence. For these reasons we affirm the trial court's finding of liability.

PAST LOST WAGES
In their second assignment of error, Defendants allege that the trial court erred by awarding past lost earnings. Defendants argue that such an award is unsupported by the evidence at trial. Defendants make allegations that Plaintiffs damages, such as the past lost wage claim and loss of sexual dysfunction, were unsupported by the evidence. A review of the record, illustrates that Plaintiffs injuries were a result of the accident in question. The medical testimony relates Plaintiffs physical injuries to the collision of September 21, 1997. Additionally, Plaintiffs testimony indicates that due to the accident and the injuries he suffered he was unable to engage in the type of work he had previously performed which resulted in a significant loss of income.
In Chapman v. Regional Transit Authority, 95-2620 (La.App. 4 Cir. 10/2/96), 681 So.2d 1301, 1307, we recognized the legal principle for an award of lost wages.
Under Louisiana jurisprudential law, wage losses may be established by any proof which reasonably establishes the claim, including the plaintiff's own reasonable testimony. Buras v. United Gas Pipeline Co., 598 So.2d 397, 402 (La.App. 4th Cir.1992).
As for a claim for past-lost wages, the Third Circuit has provided:
While claims for past lost wages must be established with some degree of certainty, Dupre v. Exxon Pipeline Co., 93-1528 (La.App. 3 Cir. 6/1/94); 638 So.2d 1118, writ denied, 94-2200 (La.11/18/94); 646 So.2d 379, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiffs claim. Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3 Cir.1991). This award may be supported by the plaintiff's detailed and uncorroborated testimony. Craig v. Burch, 228 So.2d 723 (La.App. 1 Cir. 1969), writ denied, 255 La. 475, 231 So.2d 393 (1970).
Dauzat v. Canal Insurance Co., 96-1261 (La.App. 3 Cir. 4/9/97), 692 So.2d 739, 748.
Plaintiff testified that at the time of this accident, he had three jobs. He was employed *912 at a local law office for the past 11 years as security and maintenance personnel. He testified that his wage at the time of the accident was $18,000 per year, and that he missed 90 hours of work as a result of this accident for a total in lost wages of $844.20. He also testified that at the time of the accident, his second job was with S & J Janitorial, which he co-owned for the past 9 years. He stated that his duties with S & J Janitorial involved both supervision of employees and extensive manual labor such as vacuuming, hauling trash and moving furniture. He testified that he could no longer do the manual labor portion of his cleaning duties and had to hire personnel to perform those duties for him. He stated that as a result of the injuries incurred in this accident, he has lost $1,200 per month since the date of the accident.
The trial court awarded $48,000 for losses related to the S & J Janitorial job. However, we deem this to be miscalculated because only twenty-seven months had elapsed from the date of the accident to the date of trial, rendering the figure $32,400.00 (27 × $1,200). Thus, we amend this part of the judgment, reducing the amount awarded from $48,000 to $32,400.
Finally, Daniels testified he was at the time of this accident property manager for Rivera Properties. He testified that he could no longer maintain that job subsequent to this accident because of the intense manual labor involved which his injuries prohibited him from doing. He had been employed in this capacity from 1995 until the date of this accident and earned $1,300 per month. Daniels testified that as of the date of trial, he had lost $31,000 from this employment.
Therefore, the past-lost wages, as amended, are affirmed and are now at $64,244.20.

MEDICALS
Plaintiff testified that as a result of the accident of September 21,1997, he has suffered a loss of sexual function. According to Plaintiff he has experienced "erection problems" which have had a significant deteriorating impact in his marital relation. Dr. Shamsnia performed several tests, and as part of the tests, he performed what Plaintiff classified as a "penal test" which required the injecting of 10 needles in his penis. According to Plaintiff, the test lasted for approximately five to six hours. Plaintiff further testified that Dr. Shamsnia has explained that his sexual dysfunction relates to his back injury because "the disc was pushing on the nerve...."
The case of Finwall v. Union Oil of California, 551 So.2d 673 (La.App. 1 Cir. 1989), involved a suit for damages arising out of a fall on an offshore oil platform. The 36-year-old plaintiff appealed a judgment awarding him $262,326.23 in damages. The First Circuit concluded that the trial judge was correct in his assessment of damages, except for the award for loss of sexual function. The court noted that the only available remedies to plaintiff were injections or a surgical penile implant, with neither of these remedies being a substitute for normal male functioning, and neither is without possible side effects or complications. The Appellate Court increased the trial judge's award of $25,000 for loss of sexual function to $125,000.
Further, in the case of Labit v. Setiff, 489 So.2d 942 (La.App. 5 Cir.1986), the Fifth Circuit upheld an award of $125,000 in general damages for loss of sexual function due to back surgery to a forty-four-year-old man.
Therefore, although the trial court's award of $150,000 to Plaintiff for loss of sexual function is on the upper end of the *913 spectrum, it is not outside the limits of the discretion of the trial court.

FUTURE MEDICALS
In their fourth assignment of error, Defendants allege that the trial court erred by awarding future medical expenses. Defendants argue such an award was speculative and unsupported by the evidence.
We recently revisited the issue of awarding future medical expenses in Molony v. USAA Property and Casualty Ins. Co., 97-1836 (La.App. 4 Cir. 3/4/98), 3, 708 So.2d 1220, 1221-1222. We provided the guidelines for a valid claim and award for future medical expenses as follows:
Future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred. Cooper v. Liberty Mut. Ins. Co., 96-1522 (La.App. 4th Cir.8/20/97), 699 So.2d 115. Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record. Turner v. Pelican, 94-1926 (La.App. 4th Cir.9/15/96 [9/15/95]), 661 So.2d 1065, writ denied, 95-2513 (La.12/15/95), 664 So.2d 441, quoting Dixon v. Winn-Dixie Louisiana, Inc., 93-1627 (La.App. 4th Cir.5/17/94), 638 So.2d 306. If the fact finder can determine from past medical expenses or other evidence a minimal amount that reasonable minds could agree upon, then an award is proper. Id. (Emphasis added.)
First, Plaintiff clearly testified that he intends to undergo the surgery recommended by his treating physicians. Plaintiff testified, "I'm going to have the surgery. I'm going to lose weight. I'm going to lose the weight so I can have the surgery."
Second, Dr. Kenneth E. Vogel, who was offered and accepted as an expert in the field of neurologic surgery, testified that his diagnosis of Daniels was a suspected herniated lumbar disc with cervical spondylosthesis versus segmental cervical instability. He testified that Daniels was unable to do the strenuous portion of his duties due to pain. He noted a moderate degree of muscle spasms in the lubosacral region bilaterally over a year post-accident, which is significant confirmation of radiculopathy. He testified that he has reviewed the testing and reports of Dr. Morteza Shamsnia and Dr. Johnston, and as a result recommended a microsurgical disectomy. Dr. Vogel testified depending on the future treatment, cost would vary. He stated that the cost of therapy would be $20,000, the cost of a fusion would be about $25,000, and if required, the cost of a full-scale lumbar fusion would be about $50,000. Dr. Vogel clearly testified that a patient who has not reached or has not obtained a satisfactory improvement with conservative care in over a year, such as Mr. Daniels, in all probability will require some type of surgery. He stated that when Daniels does have surgery, he would be unable to work during his recovery and rehabilitation.
Thus, the record reflects that future treatment is indeed needed.

GENERAL DAMAGES
Finally, Defendants allege in their fifth assignment of error that the trial court's general award was excessive because it was based on the speculative testimony regarding future medical expenses. Nevertheless, we find the record filled with descriptions of the treatment Plaintiff has undergone to subdue the pain he has been suffering as a result of the accident. Mr. Daniels testified that he suffered extensive injuries. This testimony was corroborated *914 by the medical evidence introduced at trial.
Jerome Daniels was 39 years of age at the time of the accident. Plaintiff testified that as a result of the impact, his body snapped to the left then to the right, and that his body made impact with the driver's-side door which was pushed into the steering wheel. He stated that as a result of the impact, he broke his dentures and felt pain in his neck, lower back, left side, and acute headaches at the scene of the accident.
The uncontested evidence and medical reports of various treating physicians, which were introduced at trial by mutual stipulation of the parties, showed that Plaintiff was initially treated by Dr. Norman Ott at Metropolitan Health Group and subsequently underwent treatment for a period of over 18-months. Plaintiff's initial complaints included injuries to his cervical/trapezius area, lumbar injury, injury to his ribs, and broken upper acrylic partial denture. On December 16, 1997, Dr. Ott referred Plaintiff to an orthopedist because of the tingling sensation Plaintiff was experiencing in his extremities.
The testimony and evidence presented at trial indicated that Plaintiff first saw orthopedic surgeon, Dr. Andrew Kucharchuk, on December 29, 1997. Dr. Kucharchuk noted that Plaintiff had cervical and lumbar MRIs, which revealed degenerative changes in the cervical area with annular fissuring at C5/6 and C6/7, and a disc herniation at L5/S1 with some impingement of the right S1 dural sleeve. Accordingly, Dr. Kucharchuk recommended that Plaintiff see a neurologic surgeon.
Plaintiff testified that in February of 1999, Dr. Kenneth Vogel examined and recommended that Plaintiff undergo a microsurgical discectomy. Further, Plaintiff testified that he went to see Dr. Kucharchuk's successor, Dr. Allen Johnston, to investigate and discuss possible alternatives to surgery. Plaintiff's testimony was corroborated by Dr. Vogel, who further testified that on July 23, 1999, Plaintiff underwent a left-side regional lumbosacral injection of anesthetic and steroid suspension at the L5/S1 disc in an attempt to subdue the pain. Unfortunately, as Plaintiff testified, the injection was very painful and only relieved his pain for two to three days. Plaintiff testified that he returned to Dr. Johnston on October 20, 1999, when he complained of continued pain radiating in his legs. Plaintiff also complained of difficulty maintaining an erection and engaging in sexual intercourse. It was Plaintiffs testimony that he incurred additional testing necessary in preparation for surgery and Dr. Johnston put him on a weight loss program because of his history of hypertension and diabetes. Dr. Johnston recommended EMG/NCV studies for radiculopathy determination in preparation for the recommended surgery.
On October 26, 1999, Dr. Morteza Shamsnia performed a lower extremities nerve conduction study, which revealed the following: right posterior tibial neuropathy; chronic bilateral lumbo/sacral radiculopathies; and accessory left peroneal nerve. The uncontested evidence shows that on November 16, 1999, Dr. Shamsnia performed dermatomal somatosensory evoked potentials test of the lower extremities, which revealed an abnormal posterior tibial study which would be consistent with neuropathy versus bilateral L5/S1 radiculopathy. The evidence introduced at trial also shows that on that same day, Dr. Shamsnia performed a pudendal evoked potentials and bulbocarnous muscle and electrical stimulation test of the penis. Plaintiff testified that these tests lasted over seven (7) hours and were extraordinarily painful. The results were inconclusive. However, Dr. Shamsnia's *915 neurological consultation report admitted into evidence by stipulation of the parties states that his examination of Plaintiff confirmed evidence of disc herniation at L5/S1 level radiculopathy. Dr. Shamsnia related his findings within a reasonable medical degree of certainty to Plaintiff's accident of September 1997.
In Reck v. Stevens, 373 So.2d 498 (La.1979), the Louisiana Supreme Court maintained that an Appellate Court is not simply to review the medical evidence and conclude that the award is excessive or inadequate. Moreover, it also stated that it disapproved of the use of a scale of prior awards in cases with similar injuries to determine whether the trier of fact abused its discretion. Idem. Rather, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances of the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp. 623 So.2d 1257, 1260 (La.1993); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (La. 1963); See Abuan v. Smedvig Tankships, Ltd., 96-1013 (La.App. 4 Cir. 6/24/98), 717 So.2d 1194, 1205. Only after such a determination of abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonable within that discretion. Supra Youn.
After setting forth this standard, the Supreme Court went on to state that:
[t]he discretion of the trier of fact is `great' and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Supra Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261
Given the particular injuries and damages suffered by Jerome Daniels, as corroborated by his treating physicians, it is clear that the damage award of the trial court was within it's broad discretion. We find no clear abuse of discretion in the Judgment of the trial court.
For the foregoing reasons, we affirm the Judgment of the trial court as amended.
AFFIRMED AS AMENDED.