JjPLOTKIN, Judge.
Plaintiff-appellant, Kerry Westmore-land, appeals the jury’s award of general damages and the jury’s decision to award nothing for loss of future earnings and earning capacity. The plaintiff claims that the jury abused its discretion in both of these cases. This appeal raises only issues of fact, not issues of law. For the reasons discussed below, we affirm the decision of the trial court.
STATEMENT OF FACTS
This case arises out of an incident which occurred on May 26, 1995, when appellant was admitted to Touro Hospital for gastrointestinal problems. She had been admitted to the emergency room after experiencing dehydration that resulted from vomiting and diarrhea. Plaintiff received an intravenous fluid (IV) to help her get hydrated. When she complained of pain an ice pack was placed on the site of the IV. The nurses did not to properly monitor the plaintiff and this caused the area around the IV to become swollen and painful.
Plaintiff admits to having a variety of medical problems prior to the date of the malpractice. She has been diagnosed with osteoporosis, a weakening of the bones. The plaintiff has also had three shoulder surgeries at different points in her life. She was diagnosed with fibromyalgia, a muscular joint syndrome, in 1987. |gThe plaintiff testified that’she had back problems in the past and said it may be a bulging disk. The plaintiff had tendonitis in her hands due to using the steno machine at her job. She stated that her doctor would give her cortisone injections which would allow her to return to work. However, using the steno machine aggravated her tendonitis.
Westmoreland had worked as a court reporter for sixteen years prior to this incident. She worked for a district judge in the 24th Judicial District Court for the Parish of Jefferson. The plaintiff testified that her hand continued to get worse over time and eventually she was not able to use the stenographers machine. When the pain persisted, the judge she was working for .allowed - her to use a tape recorder to take testimony. However, in December 1997 she took disability retirement due to the notetaking- that she had to do as part of her job.
Plaintiff filed a complaint against Touro for medical malpractice. A Medical Review Panel was assembled to evaluate her case. The Panel found Touro negligent and held that “it is probable that patient suffered reflex sympathetic dystrophy as a result of defendant’s failure to timely intervene.” The trial court approved a $100,000 settlement with Touro before the trial, commenced. According to the Medical Malpractice Act this payment constitutes an admission of liability on the part of Touro. Westmoreland subsequently filed a petition for excess damages against the defendant, The Louisiana Patients’ Compensation Fund (PCF).
The jury rendered a verdict on February 22, 2001 in favor of the plaintiff in the amount of $182,000. The jury awarded $48,038 for the following: past and future physical pain and suffering; physical disability; loss of enjoyment of life; and past and future mental pain and suffering. Westmoreland was awarded $32,664 |3for past and future medical damages and expenses and $101,373 for past loss of earnings. Nothing was awarded for future loss of earnings and loss of earning capacity. A Motion-for a JNOV seeking an increase in the award for general damages and an award for loss of future earnings and earning capacity was denied by the trial court. *1056 A judgment was entered on March 6, 2001 against the PCF in the amount of $82,075 plus interest. This award gave the PCF a $100,000 credit for the payment that had been made by Touro.
General Damages
Plaintiff claims that the general damage award of $48,000 is inadequate. West-moreland claims that $300,000 is the lowest amount the jury could award for the general damages without error. On the day of the malpractice, an IV containing potassium chloride was administered to West-moreland. This caused her hand to become swollen and sensitive. The plaintiff received treatments for her hand which included two different types of nerve blocks. Dr. Joseph Spalitta is the anesthesiologist who treated the plaintiff for reflex sympathetic dystrophy (RSD). One type of block used was a stellate ganglion which involved a needle being inserted below her Adam’s Apple. The other block used was the Bretylium block. In this type plaintiffs arm was wrapped with a rubber strip in order to force the blood out of the arm. The blood was then replaced using an anesthetic.
Dr. Spalitta testified that nerve blocks can be used to test the existence of RSD and that Westmoreland’s response to the blocks confirmed the diagnosis of RSD since there was an arresting condition during the block. However, Dr. Walter Ev-ersmeyer, plaintiffs treating rheumatologist, disagreed with this assessment. Dr. Eversmeyer stated that you don’t have to use a stellate ganglion nerve block as a diagnostic tool. Dr. Spalitta testified that plaintiffs condition is permanent and Uirreversible. According to him, plaintiff may improve but she will never fully recover.
Dr. Jack Winters was another one of plaintiffs treating physicians. Plaintiff had been a patient of Dr. Winters since 1983. Dr. Winters first noted problems with Westmoreland’s right hand as early as 1985. On May 26, 1993, the plaintiff went to Dr. Winters’ clinic but since he was not in the office Dr. Naum Klainer saw Ms. Westmoreland. During this visit Dr. Klainer noted that the patient was having pain in the right wrist. According to Dr. Winters, Dr. Klainer thought that it was a “de Quervain’s type of thing.” There is a tendon that goes from the wrist to the base of the thumb and when it is sore it becomes tendonitis. If this happens for an extended period of time the sheath of it gets so tight and the tendon can’t get through. This is de Quervain’s syndrome. Dr. Winters testified that it would be painful for someone with this syndrome to be a court reporter. Dr. Winters stated that he would have written it down if he thought the plaintiff had RSD. He never made any notation regarding RSD nor did he diagnose Ms. West-moreland as having this syndrome. It was Dr. Winters’ impression that the reason the plaintiff could not work was due to the combination of everything getting to her.
Dr. Edna Doyle was one of plaintiffs treating physicians who testified that the RSD caused deterioration in plaintiffs other hand due to overuse. Dr. Doyle prescribed physical therapy and an electrical nerve stimulator for the plaintiff. Dr. Doyle stated that she has not seen a change in plaintiffs condition and that she continued to see signs of RSD.
Some of Ms. Westmoreland’s friends testified at trial. Shirley Baudoin and Deborah Kelly testified that plaintiffs hand has been swollen and discolored since she was discharged from the hospital. Angela Gerrets, one of plaintiffs former cojworkers5 at the court, also testified as to the swollen nature of the hand and that plaintiffs court reporting caused her pain.
Dr. Sumner was the defense expert in the field of neurology. He did not exam *1057 ine or take a history of the plaintiff. He testified that he does not think that the plaintiff suffered from RSD after 1996. Dr. Sumner felt that since she was getting the nerve blocks she had pain relief as long as she wasn’t working. Dr. Sumner attributed the problems in Ms. Westmore-land’s hand to arthritis, de Quervain’s syndrome, and fibromyalgia.
The plaintiff admits that after she got a nerve block she would get some relief from the pain for four or five days. However, since she was working at the time that she was receiving the blocks she said that the pain would resume. The plaintiff was able to remain at work as a court reporter until December of 1997. She testified that the reason that she did not return to work was because she found out that she could receive disability. Since that time she has not looked for or applied for another job.
The plaintiff cites other cases involving RSD in which the amounts awarded were much greater than that awarded in the instant case. This Court recently annunciated the standard for evaluating the sufficiency of a general damages award. In Daniels v. Burridge, 2000-1089, p. 16 (La.App. 4 Cir. 3/21/01) 785 So.2d 906, 915 this Court stated:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), the Louisiana Supreme Court maintained that an Appellate Court is not simply to review the medical evidence and conclude that the award is excessive or inadequate. Moreover, it also stated that it disapproved of the use of a scale of prior awards in cases with similar injuries to determine whether the trier of fact abused its discretion. Idem. Rather, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances of the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (La.1983); See Abuan v. Smedvig Tankships, Ltd., 96-1013 (La.App. 4 Cir. 6/24/98), 717 So.2d 1194, 1205. Only after such a determination of abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonable within that discretion. Supra Youn.
The court in Youn also noted that the trial court’s discretion “is ‘great’ and even vast, so that an appellate court should rarely disturb an award of general damages.” Youn v. Maritime Overseas Corp., 623 So.2d at 1261. Only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury should the appellate court increase or reduce the award. Id. The question of Ms. Westmoreland’s diagnosis, her pre and post-injury status, and the effect of the malpractice on her health were issues clearly before the jury. After our review of the record, we find there are seriously contested factual issues. In this case plaintiff has failed to show an abuse of discretion since the medical testimony and the diagnosis were in conflict. The jury had the discretion to set the general damage award and we do not find an abuse. This case involved a clear factual dispute and the jury rejected the theory that the plaintiff had RSD. Thus, there is no basis for this Court to increase the award or to rely on the awards in other cases.
Future Earnings and Earning Capacity
The plaintiff contends that the jury abused its discretion when it failed to award anything for loss of future earnings and earning capacity. Westmoreland claims that the malpractice caused her to directly lose use of her dominant hand and indirectly her non-dominant hand. She al *1058 leges that this, along with her pre-existing conditions, made her incapable of gainful employment. Westmoreland argues that if the malpractice had not occurred she would have been able to continue her job as a court reporter for the foreseeable future. Her doctors testified |7that she probably could have continued her job if she had not been injured by the infiltration. The plaintiff testified that she returned to work within a few days of this incident and continued to work there as a court reporter for more than two years.
Mr. Bobby Roberts administered vocational tests to the plaintiff on three occasions after the malpractice occurred. He testified that Ms. Westmoreland tested above average on the perceptual and problem solving tests. He found the plaintiff to have extremely low scores using her right hand by itself and reduced score when she used her left hand only. Mr. Roberts admitted that the plaintiff can do certain things for short periods of time. Since Mr. Roberts only evaluated the plaintiff after the malpractice occurred he acknowledged that he did not know whether the malpractice was the cause of the plaintiffs impairments. He testified that based on his evaluation of the plaintiff she did not meet the requirements for sedentary or any other kind of competitive work. Thus, he saw no need to refer the plaintiff to a vocational counselor for job placement.
Ms. Nancy F. Favoloro, a vocational rehabilitation counselor, testified that she found a variety of jobs that may be available to someone such as Ms. West-moreland. These including reading to a classroom and different, customer service positions that would involve limited use of the hands.
Kenneth Boudreaux, the defendant’s economist, testified that plaintiffs future wage loss totaled $241,820 without a return to any gainful employment; $165,428 if she could earn minimum wage; and $148,326 if she could earn 50% of her prior income. Thomas Dalton, the plaintiffs economist, calculated the loss from the time plaintiff last worked until trial as $100,373. He projected her future wage loss from the date of trial going forward as being $313,881. That figure |sassumed that Westmoreland, who was 51 at trial, would work for another 10.6 years.
Plaintiff admits that she had medical problems prior to the malpractice. However, she contends that the malpractice dramatically affected her lifestyle and her ability to work. The medical testimony of Dr. Winters indicates that the plaintiff decided to stop working due to a culmination of her medical ailments. There is no indication that her decision to stop working is directly related to the instant case of malpractice. Westmoreland admits that the reason that she did not return to work in December of 1997 was because she found out that she could receive disability benefits. Since that time she has not looked for or applied for another job. This Court has held that when a plaintiff does not make an effort to find employment it is not improper for the trial court to award nothing for loss of earning capacity. See Hoerner v. ANCO Insulations, Inc., 2000-2333, pp. 46-47 (La.App. 4 Cir. 1/23/02) 812 So.2d 45. In the instant case, as in Hoer-ner, the plaintiff has failed to prove by a preponderance of evidence that the trial court erred in its decision to deny recovery for these claims. Thus, she is not entitled to an award for loss of earning capacity.
CONCLUSION
The trial court did not err in its award of general damages or in its decision to award nothing for loss of future earnings and earning capacity.
*1059 Accordingly, the trial court judgment is hereby affirmed.
AFFIRMED.