STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


04-889


MADELINE SMITH

VERSUS

VIRGINIA A. EBEY, ET AL.


**********
APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 02-0201
HONORABLE J. PHILLIP TERRELL, JR., PRESIDING

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and Michael G. Sullivan, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED .**

**Thomas O. Wells**
**P.O. Box 13438**
**Alexandria, LA   71315**
**(318) 445-4500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Madeline Smith**


**David A. Hughes**
**Hughes & LaFleur**
**201 Johnston Street, Suite 400**
**Alexandria, LA  71309**
**(318) 443-4090**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Virginia A. Ebey, et al.**

**Bonita Preuett-Armour**
**1744 Jackson Street**
**Alexandria, LA 71309**
**(318) 442-6611**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **State Farm Mutual Automobile Insurance Company**

**COOKS, Judge.**

On August 27, 2001, an accident occurred when a pick-up truck driven by Madeline Smith rear-ended a sports utility vehicle driven by Virginia Ebey. The accident occurred on Louisiana Highway 107 near its intersection with Pine Grove Drive in Pineville, Louisiana at approximately 5:40 p.m. on a weekday. Although it was still daylight, it was raining at the time, and the vehicles' windshield wipers were activated.

Immediately prior to Smith rear-ending Ebey's vehicle, Ebey rear-ended the vehicle in front of her. According to Ebey, traffic suddenly stopped in front of her, and when she applied her brakes she could not stop from making contact with the preceding vehicle. It was not disputed that Ebey was at fault in striking the car in front of her. There was a dispute as to who was at fault in the incident between Ebey and Smith.

Smith testified she was traveling behind the Ebey vehicle as they approached the intersection. Both vehicles were traveling approximately thirty-five miles per hour and were in the inside lane of the two east bound lanes. Smith stated she was unable to see in front of Ebey's vehicle, which was an Isuzu Rodeo, and larger than her pick-up truck. Smith stated she had no indication that an accident happened until she saw the rear end of Ebey's vehicle rise up, indicating it had struck something. She was adamant that Ebey did not apply her brake lights prior to the rear end lifting up off the road. Although she immediately applied her brakes, Smith stated she slid into the Ebey vehicle.

Ebey testified approximately two blocks from the intersection she became aware of the line of cars in her lane of travel. Ebey testified she maintained her same rate of speed until she was about two car lengths away from the last vehicle in the line

-1-

of cars. Ebey stated the reason she did not attempt to stop sooner was that the last vehicle in the line did not have its brake lights on until she was two car lengths away. At this point, Ebey realized the cars were stopped and immediately applied her brakes. However, she could not stop in time on the wet road and struck the vehicle in front of her. Seconds later she was struck by the Smith vehicle.

Smith filed suit against Ebey and her liability insurer, State Farm Mutual Automobile Insurance Company, as well as her underinsured motorist insurer (also State Farm) in Pineville City Court. She sought general and special damages sustained as a result of the accident.

Smith went to the emergency room of Huey P. Long Medical Center on the day of the accident. In the months to follow, she received treatment from Dr. Robert Rush, Louisiana Physical Therapy Centers, the Alexandria Chiropractic Clinics and Dr. James Leglue. She stated as a result of the accident, she suffered from severe headaches, as well as hip, leg and shoulder pain.

Smith also contended she was unable to perform her full work duties following the accident. Prior to the accident she repaired rock pecks in the windshields of large trucks. Following the accident, Smith maintained for about three to four weeks she was unable to work at all. After that period, she was able to work on smaller vehicles that did not require climbing. Smith asserted she lost $400.00 per week for the period she was unable to work at all, and $250.00 per week when she was limited to only smaller vehicles.

After a trial on the matter, the city court judge apportioned fault for the accident 85% to Ebey and 15% to Smith. Special damages of $4,594.86 and general damages of $30,405.14 were awarded to Smith, subject to a reduction for her

percentage of fault.[1]  Ebey and State Farm, in its capacity as Ebey's liability insurer, were responsible for the first $10,000.00 of the award.  State Farm, in its capacity as Smith's underinsured motorist carrier, was responsible for the remainder of the judgment amount.  State Farm and Ebey appealed the judgment contending the city court judge erred in both his apportionment of fault and damages award.  Smith also appealed, contending Ebey should have been apportioned with 100% of the fault.

## ANALYSIS

### A. DAMAGE AWARDS.

State Farm's first assignment of error concerns the propriety of the city court's judgment which placed the award for loss of wages into the general damage award, rather than setting forth the amount as special damages.  Louisiana Code of Civil Procedure Article 1917 provides in pertinent part that "[i]n nonjury cases to recover damages for injury, death or loss, . . . the court shall make specific findings that shall include those matters to which reference is made in Paragraph C of Article 1812 of this Code."  Louisiana Code of Civil Procedure Article 1812(C)(4) requires the court set forth "[t]he total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars."  State Farm argues it is unsure of the specific amounts awarded for general pain and suffering, lost wages and lost earning capacity.  It also contends this court will be unable to determine how the trial court arrived at its conclusions and the amounts that it awarded the plaintiff.  We agree.  While the $4,594.86 in medical expenses is easily documented, the city court judge's lump sum award of $30,405.14 was obviously rendered to arrive at the $35,000.00 jurisdictional limit of the Pineville City Court.  We have no way of determining what part of the award was for lost

---

[1]  The total amount of the award was $35,000.00, which was the jurisdictional limit of the Pineville City Court.

-3-

wages other than the $1,600.00 awarded for the first four weeks after the accident. The city court judge also specifically referenced damages for lost earning capacity, although we cannot determine what, if any, amount he gave for that category. Likewise, we cannot determine what part of the award was for general damages.

We are, therefore, compelled to conclude that the court committed reversible error in the rendition of its judgment in failing to comply with the requirements of La.Code Civ.P. arts. 1917 and 1812(C)(4). When the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts *de novo* from the entire record and render a judgment on the merits. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The record before us is sufficiently complete to enable us to render a judgment on the merits as mandated by *Rosell*.

The accident occurred on August 27, 2001. Smith stated her health prior to the accident was fine. The night of the accident, Smith was treated at the emergency room of Huey P. Long Medical Center, complaining of pain in her hip, leg and shoulder. X-rays and a CT Scan of the lumbar spine were performed. All were negative for significant pathology and she was discharged.

She was then treated over the next eleven weeks by Dr. Robert Rush. She complained of pain in her neck and shoulders with pain in her right lower back extending down her right leg to her lower thigh. She also gave a history of headaches with exacerbation subsequent to the accident. Dr. Rush prescribed certain medications and sent her to physical therapy. Smith also saw Dr. Robert Boisvert two times who treated her with manipulation. Her last visit was on November 30, 2001.

After her last treatment with Dr. Boisvert, Smith did not receive any medical treatment until January 21, 2003, when she began a series of acupuncture treatments

from Dr. James Leglue. Smith testified that during the gap in treatment her condition "was still horrible. I was . . . I mean, Tylenol and Anacin is . . . I was eating like candy, because I was just hurting so bad, but those doctors had never done anything, so . . . I mean, why would I keep going." State Farm points out that not only did Smith refrain from medical treatment during this fourteen month period, she did not refill any of the prescriptions for pain given to her by Dr. Rush. She also did not fill any new prescriptions during that time period. By her own testimony, Smith admitted she only took Tylenol and Anacin even though she was "hurting so bad." State Farm also notes that the treatment with Dr. Leglue began five days after her deposition was taken for trial.

Dr. Leglue examined Smith and gave his impression that she suffered from "cervical myofascial pain syndrome and probable right carpal tunnel syndrome. In the low back there is a right piriformis syndrome, right iliolumbat dysfunction and mild right lumbar facet joint syndrome." He treated Smith three times with acupuncture during a two and one half week period, after which Smith admitted her pain was resolved and she was able to return to her full duties.

After reviewing the record, we find, at a minimum, Smith impeded her own recovery by foregoing medical treatment for fourteen months. By her own testimony she went fourteen months with no treatment, therapy or prescription medication. She then was able to achieve full recovery after only three acupuncture treatments. Therefore, we will not award damages and lost wages for the entire period between the date of the accident and February 10, 2003. We find the record supports that Smith's injuries should have been resolved in a six-month period. Accordingly, we will award lost wages for six months and award general damages based on a soft tissue injury with a duration of six months.

### I.    *Lost Wages.*

Smith was awarded $1,600.00 for the four weeks she was unable to work at all, based on a wage of $400.00 per week. That four-week period ended on September 24, 2001. At that point, Smith testified she was able to work on the windshields of smaller vehicles, but still could not climb larger vehicles. She testified she was only able to earn $150.00, rather than her normal $400.00. Thus, based on her six-month injury there was a twenty-two week period where she was only able to earn $150.00 per week. This amounts to a further loss of wages of $5,500.00. There is no basis for an award for lost earning capacity, as Smith testified after her acupuncture treatments, she was able to return to her full duties. Thus, we will award Smith $7,100.00 in lost wages.

State Farm argued the city court judge erred in making any award for lost wages, because the record indicates Smith was able to continue working after the accident. State Farm points out Dr. Rush's records indicate Smith was able to work after the accident. Dr. Rush treated Smith six times during the first eleven weeks after the accident, including the four-week period wherein Smith testified she was unable to work at all. All of his reports had a note indicating that Smith was working, with the exception of his September 11, 2001, notes wherein he wrote that Smith was working "on and off." Smith testified she never told Dr. Rush she was able to work and maintained on cross-examination that Dr. Rush should have known she was not working. Dr. Rush was not deposed nor did he testify in this matter. The questionnaire filled out by Smith in November of 2001 for the Alexandria Chiropractic Clinic indicates she lost days of work due to her injuries.

Under Louisiana jurisprudence, damages for lost wages may be established by any proof which reasonably establishes the claim, including the plaintiff's own

reasonable testimony. While claims for past lost wages must be established with some degree of certainty, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiff's claim. This award may be supported by the plaintiff's detailed and uncorroborated testimony. *Daniels v. Burridge*, 00-1089 (La.App. 4 Cir. 3/21/01), 785 So.2d 906, *writ denied*, 01-1110 (La. 6/1/01), 793 So.2d 201. The city court judge noted his belief that Smith's testimony was credible. Therefore, we cannot say an award for lost wages was not justified in the record evidence.

## II. *General Damages.*

Having found Smith sustained a six-month soft tissue injury, we must determine an appropriate award. State Farm in brief argues Smith sustained a three-month soft tissue injury and cites jurisprudence that a reasonable award should not exceed $5,000.00 in damages. After reviewing the jurisprudence, we find a general damage award of $12,000.00 is appropriate in this case. Accordingly, we will award $12,000.00 in general damages for Smith's six-month soft tissue injury.

## B. *APPORTIONMENT OF FAULT.*

The city court judge found Ebey to be 85% at fault and Smith to be 15% at fault in causing the accident. Both parties argue the other should be 100% at fault.

The law imposes a duty of great care on a motorist following a preceding motorist. *La. Farm Bureau Mut. Ins. Co. v. Regal Ins. Co.*, 01-1446 (La.App. 3 Cir. 3/6/02), 809 So.2d 1280. An exception, however, is recognized when the driver of the preceding or lead vehicle negligently creates a hazard which the driver of the following vehicle cannot reasonably avoid. *Id.* The city court judge found credible Smith's testimony that Ebey's brake lights did not come on until she had already struck the vehicle in front of her. He also specifically stated he did not find credible

Ebey's testimony that she applied her brakes approximately two car lengths behind the car she struck. "When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings." *Rosell*, 549 So.2d at 844. If "a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Id.* at 845. Therefore, we cannot say the city court judge erred in its credibility determinations.

### DECREE

For the foregoing reasons, the portion of the judgment assessing fault to the parties is affirmed. The portion of the judgment awarding damages is hereby reversed and judgment is rendered awarding Madeline Smith $4,594.86 in medical expenses, $7,100.00 in lost wages and $12,000.00 in general damages. The awards are subject to a reduction for Smith's percentage of fault. All costs of this appeal are assessed equally to Madeline Smith and State Farm.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED .**